**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **JUANA CRUZ, OFELIA** | § | |
| **BENAVIDES, JOSE ELIAS NG,** | § | |
| **GABRIELA VELAZQOEZ,** | § | |
| **RICARDO GONZALO, MELESIO** | § | |
| **CRUZ, ANGELICA CHAVEZ,** | § | |
| **CONCEPCION PEREZ, OLGA** | § | |
| **PEREZ, MAURICO SANCHEZ,** | § | |
| **JORGE MAULEON,  HECTOR** | § | |
| **SANCHEZ, HECTOR GONZALEZ,** | § | |
| **YESSY PEREZ MARTINEZ MARIA** | § | |
| **DE LOURDES CRUZ, RESENDO** | § | |
| **LIEVANOS, ELIZABETH LARA,** | § | |
| **LUIS ALBERTO ZUNGIA** | § | |
| **CASTILLO, MIGUEL CABALLERO** | § | |
| **SANCHEZ, GUILLERMO DE LA** | § | |
| **CRUZ MENDOZA, CARLOS** | § | |
| **DANIEL LOPEZ, GILDA RIVAS,** | § | |
| **ARMANDO MORALES DE LLANO,** | § | |
| **LAZARO GARCIA, MARIA DE** | § | |
| **JESUS MEDINA, RICHARD** | § | |
| **ESQUIVEL, PATRICIA CONDE-** | § | |
| **GONZALEZ, NORMA CONDE** | § | |
| **ALANIZ, RAFAEL SANCHEZ,** | § | |
| **GUILLERMO RUIZ, ROSA** | § | |
| **QUINTANILLA** | § | |
| **Individually,** | § | |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.: 7:23-cv-00343** |
| | § | |
| **DELGAR FOODS, INC D/B/A/** | § | **JURY DEMANDED** |
| **DELIA'S TAMALES** | § | |
| | § | |
| *Defendants.* | | |

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | |
|---|---|
| **JUANA CRUZ, OFELIA** § | |
| **BENAVIDES, JOSE ELIAS NG,** § | |
| **GABRIELA VELAZQUEZ,** § | |
| **RICARDO GONZALO, MELESIO** § | |
| **CRUZ, ANGELICA CHAVEZ,** § | |
| **CONCEPCION PEREZ, OLGA** § | |
| **PEREZ, MAURICO SANCHEZ,** § | |
| **JORGE MAULEON,  HECTOR** § | |
| **SANCHEZ, HECTOR** § | |
| **GONZALEZ, YESSY PEREZ** § | |
| **MARTINEZ MARIA DE** § | |
| **LOURDES CRUZ, RESENDO** § | |
| **LIEVANOS, ELIZABETH LARA,** § | |
| **LUIS ALBERTO ZUNGIA** § | |
| **CASTILLO, MIGUEL** § | |
| **CABALLERO SANCHEZ,** § | |
| **GUILLERMO DE LA CRUZ** § | |
| **MENDOZA, CARLOS DANIEL** § | |
| **LOPEZ, GILDA RIVAS,** § | |
| **ARMANDO MORALES DE** § | |
| **LLANO, LAZARO GARCIA,** § | |
| **MARIA DE JESUS MEDINA,** § | |
| **RICHARD ESQUIVEL,** § | |
| **PATRICIA CONDE-GONZALEZ,** § | |
| **NORMA CONDE ALANIZ,** § | |
| **RAFAEL SANCHEZ,** § | |
| **GUILLERMO RUIZ, ROSA** § | |
| **QUINTANILLA** § | |
| **Individually,** § | |
| *Plaintiffs,* § | |
| § | |
| § | |
| § | **CIVIL ACTION NO.:** |
| **v.** § | **7:23-cv-00343** |
| § | |
| **DELGAR FOODS, INC D/B/A/** § | |
| **DELIA'S TAMALES** § | **JURY DEMANDED** |
| *Defendants.* § | |

## PLAINTIFFS' SECOND AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs JUANA CRUZ, OFELIA BENAVIDES, GABRIELA VELAZQUEZ, MELESIO CRUZ, ANGELICA CHAVEZ, OLGA PEREZ, MAURICIO SANCHEZ, JORGE MAULEON, HECTOR GONZALEZ, YESSY PEREZ, LUIS ALBERTO ZUNGA, RICARDO ESQUIVEL, RAFAEL SANCHEZ, ROSA, QUINTANILLA, JOSE ELIAS NG, RICARDO GONZALO, CONCEPCION PEREZ, HECTOR SANCHEZ, MARIA DE LOURDES CRUZ, ROSENDO LIEVANOS, ELIZABETH LARA, MIGUEL CABALLERO, CARLOS DANIEL LOPEZ, GILDA RIVAS, ARMANDO MORALES DE LLANO, LAZARO GARCIA, MARIA DE JESUS MEDINA, GUILLERMO RUIZ (hereinafter "Plaintiffs"), file this lawsuit as a collective action against Defendants DELGAR FOODS, INC, D/B/A DELIA'S TAMALES (hereinafter "Delia's Tamales") and DELIA GARZA INDIVIDUALLY (a/k/a Delia Lubin) (hereinafter "Delia"), (collectively "Defendants") to recover unpaid overtime wages, liquidated and treble damages, litigation costs, and attorney's fees, and for cause of action would show the following:

## I.    INTRODUCTION

1.     This civil filing began in State District Court in Hidalgo County, Texas and was then removed to Federal Court.  This is a Fair Labor Standards Act and Texas payday law and civil RICO (RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT) CASE.

2.     However, by drilling down into the facts of the case it becomes quickly apparent that this case is about human trafficking, exploitation of undocumented people for personal gain, trafficking, exploitation of government documents, tampering with government documents, abuse of working conditions, and a case of working in a sweatbox and a form of involuntary servitude.

3.     Every day, people are brought illegally into the United States and other areas of the world for a variety of reasons. Many of those people seek employment in their destination location. This is common in the United States for a person ill smuggled here to seek work.

4.     What is not common is for a person who has been trafficked and exploited to be continued subjects of exploitation by their unscrupulous employer. Employers who scheme to pay below minimum wage, fail to pay overtime, supply the people with false documents to commit fraud on Homeland Security, and then to terminate those employees when the scheme becomes public.

5.     Then, those same employers accumulate millions of ill-gotten dollars based on the sweat and sacrifice of countless vulnerable and exploited workers all to build a grandiose and expensive operation designed to exploit future undocumented workers.

6.     Unfortunately, all of the relevant and material facts in this case lead to the need to remedy this exploitation in a court of law so that proper and fair compense can be sought.

## II.     NATURE OF CLAIMS

7.     This is a collective action filed under the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq*. (the "FLSA"), and Racketeering Influenced and Corrupt Organization ("RICO") to correct unlawful employment practices, including Defendant's willful and knowing violations of the overtime provisions of said law.  Plaintiffs and all others similarly situated, seek to recover unpaid overtime wages, liquidated and treble damages, attorneys' fees, and any and all other damages allowed under the FLSA.

8.     Fraud-Plaintiffs were given fake social security numbers and fake permanent resident cards to work at Delia's Tamales, from Delia, or her employees. Delia and her managers had knowledge that most if not all of their employees were undocumented and would supply them with fake documents. They would deduct social security taxes from Plaintiffs' pay, knowing that the

social security number was fake, and would not match.

Fraudulent Concealment

9.      Defendants furnished fake social security cards to Plaintiffs. Plaintiffs thought that their retirement (social security) deductions were going into that social security account/card supplied to them by Defendants. Once they were terminated from employment, Plaintiffs some of whom had worked for Delia's Tamales for over 20 years, sought social security benefits only to be informed/discover their social security numbers were invalid and did not match their name.   It was a pattern displayed by Defendants, employees would work a certain number of quarters, then would be let go when they were close to accumulating sufficient quarters of employment to qualify for social security benefits.   Defendants had a fiduciary relationship with Plaintiffs, because Plaintiffs believed their (social security) deductions were being deducted and credited toward their social security account.

Exploitation of Undocumented Individuals/Government Records

10.    Defendants supplied fake social security cards and permanent resident cards to Plaintiffs.   Co-Employees who work for Defendants would sometimes supply new employees with fake social security cards.   At all times, Defendants had knowledge that this was occurring, it was a big criminal enterprise! They would hire undocumented individuals provide fake social security cards and fake

permanent resident cards; then deducted weekly from their pay social security deductions. These deductions continued until Plaintiffs were terminated. Defendants terminated Plaintiffs because of their legal status and whose status was finally known by Defendants. On information and belief, Defendants continued to employ undocumented individuals and supply them false documents.

<u>Misclassification of Employees</u>

11.    Misclassification occurs when your employer does not pay wages or benefits as they should, given their true employment status. While some employers may have engaged in misclassification because they were under Delia, the applied law some misclassified employees deliberately as a way to divert these funds for the benefit of the company.

12.    Employers who misclassify employees violated Federal and State laws. These laws impose penalties for engaging in this practice and provide aggrieved workers compensation for the harm they suffered as a result of this intentional misclassification.

13.    Defendants misclassified nine former employees. Delia classified them as managers, so Defendants could avoid paying overtime to those nine individual employees. Most of these employees worked in excess of 60 hours a week with no overtime pay.

### III.   JURISDICTION AND VENUE

14.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

15.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because it is the district in which Defendants reside.

## IV.   THE PARTIES

16.    Plaintiffs are individuals who reside in Hidalgo County, Texas. Plaintiffs are former employees of Defendants.

17.    Plaintiffs at all times claimed worked in Hidalgo County, Texas.

18.    All work performed by Plaintiffs was for the benefit of Defendants. Defendants did not always pay Plaintiffs for all hours worked.

19.    Defendants supplied fake social security cards, and permanent resident cards to some Plaintiffs.

20.    Defendants also ordered Plaintiffs to seek and secure social security cards and permanent resident cards so they could employ them fully knowing Plaintiffs would legally obtain proper work documentation.

21.    Defendant DELGAR FOODS, INC D/B/A DELIA'S TAMALES is a Domestic for-profit corporation based in San Juan, Texas and has already been served.

22.    Defendant DELIA GARZA INDIVIDUALLY (a/k/a Delia Lubin) may be served with process at 106 W. Nolana San Juan, TX. 78589, or wherever she may be found.

## V.    FACTS

23.    At all times relevant to this lawsuit, Delia's Tamales was and remains an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203, and is subject to the FLSA.

24.    Defendants own and operate Mexican restaurants in the Rio Grande Valley area. Those restaurants include DELIA'S Tamales, located at 3400 N. 10th St. McAllen, TX. 78501, 4800 S. 23rd Ste., Ste 5 McAllen, TX. 78503, 602 W. Griffin Pkwy Mission, TX. 78572, 1501 E. Monte Cristo Edinburg, TX.78542, 2000 N. Jackson Rd. Pharr, TX. 78577, 106 W. Nolana San Juan, TX. 78589, 13527 Hausman Pass San Antonio, TX. 78249.  DELIA'S Tamales, located at 106 W. Nolana San Juan, TX. 78589.

25.    Plaintiffs were employed by Defendants to work in their restaurants. Defendants employed Plaintiffs at all relevant times within the meaning of the FLSA. 29 U.S.C. § 203(g).

26.    As employees of Defendants, Plaintiffs and similarly situated employees were engaged in commerce or in the production of goods for commerce or were employed in an enterprise engaged in commerce or in the production of goods

for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

27.     Delia's Tamales had employees handling and working on materials/goods which have been moved in or produced for commerce – namely food.

28.     Delia is an owner and/or an officer of Delia's Tamales and at all relevant times controls or substantially had oversight on its day-to-day operations. Delia was at all relevant times responsible for overseeing the day-to-day operations of Delia's Tamales, processing payments for the products the business sold by and through its employees, billing customers for products sold, hiring, firing and supervising the work of employees, ordering materials and supplies for the business, managing employment records, paying employees and directing other business matters.

29.     Plaintiffs were employed by Defendants to prepare food, provide customer service and clean the business facilities.

30.     Plaintiffs customarily and regularly worked in excess of forty (40) hours per week up to over seventy (70) hours in some seven (7) calendar day weeks.

31.     Plaintiffs were not paid overtime of one-and-one-half times their regular rate of pay when they worked in excess of forty (40) hours a week.

32.     After Plaintiffs were terminated some visited the local Social Security Administration and inquired how much they have accumulated in quarters during the time they worked at Delia's Tamales. They discovered that their social security

numbers did not match their name.

33.     Plaintiffs believed that the deductions from their social security cards, which either Delia provided to them or which were provided by Delia's Tamales employees, from their weekly pay were being credited to their social security account.

34.     On information and belief, other similarly situated employees customarily and regularly worked many hours in excess of forty (40) hours per week and were paid in a fashion similar to Plaintiffs.

35.     The work performed by Plaintiffs and other similarly situated employees was with Defendants' knowledge. Defendants set Plaintiffs 'and similarly situated employees' schedules, assigned work, and supervised their work.

36.     Plaintiffs and similarly situated employees were entitled to overtime at one-and-one-half times their regular rates of pay for all hours worked in excess of forty (40) hours in a workweek. Defendants did not pay Plaintiffs and similarly situated employees one- and one-half times their regular rates of pay for hours worked in excess of forty per week.

37.     Defendants failed to keep and maintain records of Plaintiffs' working time as required by the FLSA, 29 U.S.C. § 211.

38.     Defendants supply the Plaintiffs with false documents to commit fraud, and then terminate those employees when Plaintiffs were accumulating close to

the number of quarters to qualify for social security benefits.

39.     Those same employers accumulate millions of ill-gotten dollars based on the sweat and sacrifice of countless vulnerable and exploited workers all to build a grandiose expensive operation designed to exploit future undocumented workers (the $15,000,000 San Juan tamale factory).

## VI.   First Cause of Action: FLSA Wage Violations

40.     Plaintiffs reassert and incorporate by reference all of the above numbered paragraphs.

41.     Plaintiffs were engaged in nonexempt hourly work, as set forth above.

42.     Plaintiffs were legally entitled to be paid overtime wages of one-and-one-half times their regular rate of pay for hours worked in excess of forty (40) hours per each seven (7) day workweek.

43.     Defendants failed to pay Plaintiffs at one-and-one-half times their regular rate of pay for hours worked in excess of forty (40) hours per each seven (7) day workweek in violation of the FLSA 29 U.S.C. § 207.

44.     As a result, Plaintiffs did not receive the compensation they were legally entitled to receive.

45.     Defendant's violations of the FLSA were committed knowingly, willfully, and/or with reckless disregard to Plaintiffs' rights.

46.     As a result of Defendants' willful violations of the FLSA, Plaintiffs are

entitled to compensation of unpaid overtime wages, an additional equal amount as liquidated damages, exemplary damages, and reasonable attorneys' fees, litigation costs and disbursements incurred in this action pursuant to 29 U.S.C. § 216(b).

## VII.   SECOND CAUSE OF ACTION: COLLECTIVE ACTION ALLEGATIONS

47.    Plaintiffs reassert and incorporate by reference all of the above numbered paragraphs.

48.    On information and belief, other similarly situated employees employed by Defendants over the three (3) years prior to filing suit have been victimized by Defendants' violations of the FLSA.

49.    As set forth above, Plaintiffs are aware of other employees who perform similar work for Defendants.

50.    These employees should be notified of this action and given an opportunity to join pursuant to 29 U.S.C. § 216 (b). The class is properly identified as:

> All persons who, at any time during the three (3) years immediately preceding the filing of this lawsuit, worked at any business which were owned, operated, and/or acquired by Defendants, who were not paid minimum wages and overtime at a rate of one and one-half times their regular rate for hours worked in excess of forty (40) per week.

51.    Defendants' practice of not paying employees similarly situated to Plaintiffs one-and- one-half times the regular rate of pay for all hours worked in excess of forty (40) hours per each seven (7) day workweek is in direct violation of the FLSA.

52.    As a result of Defendants' willful violations of the FLSA, the similarly situated employees are entitled to compensation for unpaid overtime wages owed, an additional equal amount as liquidated damages, exemplary damages, and reasonable attorneys' fees, litigation costs and disbursements incurred in this action pursuant to 29 U.S.C. § 216(b).

### VIII.  THIRD CAUSE OF ACTION FRAUDULENT CONCEALMENT

53.    Defendant furnished fake social security cards to Plaintiffs. Plaintiffs were led to believe retirement/social security deductions were being deposited into their social security account provided by Defendants. Once Employer approved eligibility for future social security benefits, Plaintiffs were terminated from employment. Some Plaintiffs worked for Delia's Tamales for over 20 years and once they were terminated, some visited the local social security administration office only to be informed that their social security number were invalid.  This was a common practice of Defendants. Employees worked a certain number of quarters, they would be terminated because they were close to accumulating sufficient quarters to qualify for social security benefits. Defendants had a

fiduciary relationship with Plaintiffs, because Plaintiffs were led to believe their deductions were going to be credited into their social security account.

## IX. FOURTH CAUSE OF ACTION EXPLOITATION OF UNDOCUMENTED INDIVIDUALS/GOVERNMENT RECORDS

54.     Defendants provided fake social security cards and permanent resident cards to Plaintiffs. Co-Employees of Defendants would provide fraudulent social security cards to new employees with Defendants' full knowledge. At all times, Defendants had actual knowledge this was occurring. Delia Garza and/or managerial Employees would hire undocumented individuals and provide them fake social security cards and fake permanent resident cards, Defendants would deduct social security taxes from their paycheck once a week. Defendants terminated Plaintiffs because of their legal status, on information and belief, Defendants continued to hire undocumented individuals and provide them with fake cards.

## X. FIFTH CAUSE OF ACTION MISCLASSIFICATION OF EMPLOYEES

55.     Misclassification occurs when an employer does not pay its employees wages or benefits as they should be paid, given their true employment status. While some employers engaged in misclassification because of informal fee pay law, others misclassify employees deliberately to save money and increase the company profit.

56.     Employers who misclassify employees are violating several federal and state laws. These laws impose penalties for engaging in these practices and provide aggrieved workers compensation for the harm they suffered as a result of misclaimed taxes. Defendant misclassified nine former employees. Delia classified them as managers, so as not to pay overtime to these nine (9) individual employees.

## XI.  SIXTH CLAIM FOR RELIEF: VIOLATIONS OF FEDERAL CIVIL RICO--CONDUCT OF A RICO ENTERPRISE, 18 U.S.C. §  1962(c) (RICO DEFENDANTS)

57.     Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

58.     At all relevant times, RICO Defendants are each "person[s]" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

59.     RICO Defendants each violated 18 U.S.C. § 1962(c) by the acts described in the preceding and following paragraphs below.

<u>The Enterprises</u>

60.     At all relevant times, DELGAR FOODS, INC D/B/A/ DELIA'S TAMALES AND DELIA GARZA INDIVIDUALLY (a/k/a Delia Lubin), constitute an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  At all relevant times, the Defendants were engaged in, and/or its associated activities affected, interstate commerce and/or foreign commerce

within the meaning of 18 U.S.C. § 1962(c). At all relevant times, RICO Defendants held a position with DELGAR FOODS, INC D/B/A/ DELIA'S TAMALES as alleged herein, were not limited to RICO Defendants' predicate acts and have activities extending beyond RICO Defendants' racketeering activity. The Defendant DELGAR FOODS, INC D/B/A/ DELIA'S TAMALES exist separate and apart from the pattern of racketeering activity. The RICO Defendants have had and do have legitimate business plans outside the pattern of racketeering activity related to DELIA'S TAMALES.

<u>Use of the Mail and Wires to Defraud, in violation of</u>
<u>18 U.S.C. §§ 1341 and 1343</u>

61.    RICO Defendants devised or intended to devise a scheme to defraud Plaintiffs of money, social security benefits, and/or federal benefits of monetary value by supplying Plaintiffs with false or fraudulent social security numbers and work documents.

62.    For the purposes of executing their scheme, RICO Defendants delivered or caused to deliver various fraudulent working documents, W2s and social security cards and fraudulent social security deductions by or through U.S. mail, electronic transfers or by private or commercial interstate carriers. For the purposes of executing their scheme, RICO Defendants transmitted or caused to be transmitted by means of wire communications and electronic transfers or U.S.

mail in interstate or foreign commerce fraudulent work documents and social security deductions and 941 deductions for which should have been paid into the social security accounts and IRS accounts.

63.    In furtherance of their scheme, RICO Defendants used the wires and/or U.S. mails or electronic transfers to deliver documents and things to Plaintiffs or the Enterprises for the purposes of defrauding Plaintiffs, including, but not limited to the following:

>    (a)    Writing false work documents and deductions for social security benefits or employment taxes representing to the Plaintiffs that they were eligible for employment and as well as some day receiving federal benefits which were social security benefits based on deductions from their weekly paychecks which were never submitted to the social security administration and the IRS.
>    (b)    Through U.S. mail or electronic mail and/or bank wire transfers the RICO Defendants' scheme was to defraud the Plaintiffs of monies and property as well as future federal benefits.
>    (c)    The deductions and/or social security deductions were deducted by the Defendants with the intent that these funds be utilized to promote or carry on the Defendants' scheme to defraud the Plaintiffs of money and future federal benefits in the form of social security.

64.    The RICO Defendants used wire and/or mail communications in furtherance of their scheme to defraud Plaintiffs, in violation of 18 U.S.C. §§ 1341 and 1343, including but not limited to, the following instances:

>    (a)    Either utilizing U.S. mail or electronic bank transfers reflecting that the social security benefits and 941s were being deducted from their weekly pay, and presumably should have been forwarded to the social security administration and IRS.

65.    The RICO Defendants used the wires and mails in interstate commerce with intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of an unlawful activity.

66.    The RICO Defendants racketeering activities were multiple, continuous, and ongoing from about 2002, and this remains ongoing.

67.    The RICO Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to advance their scheme to deprive or defraud the Plaintiffs.  RICO Defendants knowingly and intentionally deducted social security benefits and 941 deduction from Defendants' employees' weekly pay, in furtherance of RICO Defendants' scheme to defraud them.

<u>Money Laundering in Violation of 18 U.S.C. § 1956(a)(1)(A)(i)</u>

68.    RICO Defendants have, on multiple occasions, knowing that the social security deductions involved in such financial transactions represented the proceeds of some form of unlawful activity, conducted or attempted to conduct a financial transaction which in fact involved the proceeds of specified unlawful activity with the intent to promote the carrying on of specific unlawful activity, including, but not limited to, violations of 18 U.S.C. §§ 1341 and 1343.  RICO Defendants have, therefore, violated 18 U.S.C. § 1956(a)(1)(A)(i).

69.    Each RICO Defendant engaged in multiple predicate acts, as described in paragraphs 57-73.  The conduct of each RICO Defendant described in paragraphs

57-73, constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

70.   RICO Defendants' violations of federal law as set forth herein, each of which directly and proximately injured Plaintiffs, constitutes a continuous course of conduct, which was intended to defraud Plaintiffs of money and property through false representations, fraud, deceit, and other improper and unlawful means.  Therefore, said violations were a part of racketeering activity as defined by 18 U.S.C. §§ 1961(1) and (5).

71.   Plaintiffs were injured in that their money and property in the form of future social security benefits by reason of RICO Defendants' violation of 18 U.S.C. § 1962(c).

72.   RICO Defendants' injuries to Plaintiffs were a direct, proximate, and reasonably foreseeable result of their violation of 18 U.S.C. § 1962.  Plaintiffs are the ultimate victims of RICO Defendants' unlawful enterprise.  Plaintiffs have been and will continue to be injured in that their future social security benefits will never be paid.

73.   Pursuant to 18 U.S.C. § 1962(c), Plaintiffs are entitled to recover treble damages, litigation costs and attorneys' fees from RICO Defendants as well as any other relief authorized by statute.

## IX.   JURY DEMAND

74.    Plaintiffs demand a jury on all issues to be tried in this matter.  Plaintiffs

have submitted the jury demand and herein submit the jury fee.

## X.   PRAYER

75.    For the reasons set forth above, Plaintiffs respectfully pray that the

Defendants be cited to appear and answer herein, and for the following relief:

a.   that the Court enter an order allowing this action to proceed as a
collective action under the FLSA and directing notice to any and all
similarly situated employees;

b.   judgment awarding Plaintiffs and similarly situated employees all
unpaid regular wages, unpaid overtime wages, liquidated damages,
exemplary damages, treble damages, attorneys' fees and costs under the
FLSA and 18 USC § 1962;

c.   an award of pre-judgment and post-judgment interest on all amounts
awarded at the highest rate allowable by law; and

d.   all such other and further relief to which Plaintiffs and similarly
situated employees may show themselves to be justly entitled.

Respectfully submitted,

_____
Ricardo Gonzalez
State Bar No. 08131490
Oxford & Gonzalez
124 S. 12th Ave.
Edinburg, TX. 78539
Phone: (956) 383-5654
Fax: (956) 381-0002
E-mail: ric@oxfordgonzalez.com

Richard Rene Alamia
Richard R. Alamia Attorney at Law
619 S. 12th Ave. (Main Office) 78539
Edinburg, TX 78539
Phone: (956) 381-5766
Fax: (956) 381-5774
E-mail: richard.alamia@yahoo.com

***ATTORNEYS FOR PLAINTIFFS***

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on August 7, 2024, a true and correct copy of Plaintiffs' Second Amended Complaint was served upon all interested parties via CM/ECF to the following:

Lorena Valle
ivalle@porterhedges.com
lalaniz@porterhedges.com

William Stukenberg
wstukenberg@porterhedges.com

Stephen Quezada
Stephen. quezada@ogletree.com

_____
Ricardo Gonzalez