# Exhibit E

```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
 2                          MCALLEN DIVISION
 3       JUANA CRUZ, OFELIA            )
         BENAVIDES, JOSE ELIAS         )
 4       N.G, GABRIELA VELAZQUEZ,      )
         HELESIO CRUZ, ANGELICA        )
 5       CHAVEZ, CONCEPCION PEREZ,     )
         OLGA PEREZ, MAVRIGO           )
 6       SAENZ, JORGE MAOLEON,         )
         HECTOR SANCHEZ, HECTOR        )
 7       GONZALEZ, YESSY PEREZ         )
         MARTINEZ, MARIA DE            )
 8       LOURDES CRUZ, RESENDO         )
         LIEVANOS, ELIZABETH LARA,     )
 9       LUIS ALBERTO ZUNIGIA          )
         CASTILLO, MIGUEL              )
10       CABALLERO SANCHEZ, CARLOS     )  CASE NO: 7:23-CV-00343
         DANIEL LOPEZ, GILDA           )
11       RIVAS, ARMANDO MORALES DE     )     JURY DEMANDED
         LLANO, LAZARO GARCIA,         )
12       MARIA DE JESUS MEDINA,        )
         RICHARD ESQUIVEL, RAFAEL      )
13       SANCHEZ, GUILLERMO RUIZ,      )
         ROSA QUINTANILLA,             )
14                                     )
                   PLAINTIFFS,         )
15                                     )
         VS.                           )
16                                     )
         DELGAR FOODS, LLC A/K/A       )
17       DELIA'S TAMALES,              )
                                       )
18                 DEFENDANT.          )
     ************************************************************
19                       ORAL DEPOSITION OF
20                    ARMANDO MORALES DE LLANO
21                         June 26, 2024
     ************************************************************
23               ORAL DEPOSITION of ARMANDO MORALES DE
24   LLANO, produced as a witness at the instance of the
25   Defendant, and duly sworn, was taken in the above-styled
```

Page 1

1  and numbered cause on the 26th day of June 2024, from
2  2:04 p.m. to 4:55 p.m., before Priscilla R. Maldonado,
3  CSR, in and for the State of Texas, reported by reported
4  by stenograph, at the Law Offices of Ricardo Gonzalez,
5  124 S. 12th Ave, Edinburg, Texas, pursuant to the
6  Federal Rules of Civil Procedure and the provisions
7  stated on the record or attached.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

```
 1                    A P P E A R A N C E S
 2    COUNSEL FOR THE PLAINTIFFS:
 3          RICARDO GONZALEZ
            OXFORD & GONZALEZ
 4          124 SOUTH 12TH AVENUE
            EDINBURG, TEXAS 78539
 5          Tel: 956-383-5654
            RIC@OXFORDGONZALEZ.COM
 6
 7    COUNSEL FOR THE DEFENDANT:
 8          STEPHEN J. QUEZADA
            OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
 9          500 DALLAS ST., STE 3000
            HOUSTON, TEXAS 77002
10          Tel: 713-655-5757
            STEPHEN.QUEZADA@OGLETREE.COM
11
            LORENA D. VALLE
12          PORTER HEDGES LLP
            1000 MAIN STREET, 36TH FLOOR
13          HOUSTON, TEXAS 77002-6341
            Tel: 713-226-6000
14          LVALLE@PORTERHEDGES.COM
15          ELIZABETH SANDOVAL CANTU
            RAMON WORTHINGTON NICOLAS & CANTU, PLLC
16          1506 SOUTH LONE STAR WAY, SUITE 5
            EDINBURG, TEXAS 78539
17          Tel:  945-294-4800
            ECANTU@RAMONWORTHINGTON.COM
18
19    ALSO PRESENT:
20          NICOLAS GIBLER, INTERPRETER
            MIGUEL CABALLERO, PLAINTIFF
21          LUIS ZUNIGA, PLAINTIFF
            OLGA PEREZ, PLAINTIFF
22          CARLOS LOPEZ, PLAINTIFF
23
24
25
```

INDEX

PAGE

Appearances.................................... 3

ARMANDO MORALES DE LLANO

Examination By Mr. Quezada.............. 8

Changes and Signature.......................... 51

Reporter's Certification....................... 53

EXHIBITS

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Declaration | 30 |
| Exhibit 2 | Request for Production | 45 |

```
 1        Q.   And you never complained about them, did you?
 2        A.   Of --
 3        Q.   About those words?
 4        A.   No.  Who could I complain to if she was the
 5   owner?
 6        Q.   Well, I didn't ask you that.  I asked, did you
 7   complain?
 8        A.   No.  I never complained.
 9        Q.   Okay.  So the comment about -- you're saying
10   Ms. Delia made about if people don't want to work, you
11   know, you got to fire them.  You said that was a couple
12   years before you were terminated, in December.  Would
13   that have been December 2020?
14        A.   More or less.  I don't recall exactly, but
15   thereabouts.
16        Q.   Okay.  So I understand the comment.  But I want
17   to know, more specifically, whether you're contending
18   that Ms. Delia, at anytime in the last three years of
19   your employment, whether you know she made decisions
20   about hiring or firing anyone?
21        A.   Not that I know.
22        Q.   And in the last three years of your employment,
23   do you know, specifically, whether Ms. Delia set
24   anyone's pay or schedules?
25        A.   Well, the schedules, no.  But the payments,
```

Veritext Legal Solutions
346-293-7000

```
 1    yes.  If there was a salary increase or something like
 2    that, she'd have to authorize it herself.
 3         Q.   And how do you know that?
 4         A.   Because Alberto told me.
 5         Q.   Did you ever see her do that in the last three
 6    years of your employment?
 7         A.   No.  As I answered before, I mean, Alberto
 8    would tell me, but I never said that I saw her.
 9         Q.   Okay.  Understood.  In the last three years of
10    your employment with Delia's, did you ever see Ms. Delia
11    disciplining anyone?
12         A.   No.
13         Q.   You never saw that?
14         A.   No.
15         Q.   In the last three years of your employment with
16    Delia's, did you ever see Ms. Delia make any promotions
17    or demotion decisions?
18         A.   No.
19         Q.   In your last three years of your employment,
20    did you ever see Ms. Delia authorize any particular work
21    schedules?
22         A.   No.
23         Q.   I believe you said you still have pay stubs
24    from Delia's?
25         A.   No.  I did not tell you that, but I do have
```

```
 1        Q.   Did you-all have a armed vehicle service that
 2   came and picked up the cash from the store?
 3        A.   No.
 4        Q.   Did you deposit on behalf of the store?
 5        A.   Yes.
 6        Q.   And would you ever go get cash from the bank
 7   for the store?
 8        A.   No.
 9        Q.   You just deposited it?
10        A.   That is correct.
11        Q.   Who told you about the lawsuit -- this lawsuit?
12        A.   No.  I asked -- well, there was a comment and I
13   asked for information.  So I resorted to the lawyer and
14   asked for information.
15        Q.   Okay.  From whom did you hear the comment?
16        A.   I asked a co-worker.
17        Q.   And what co-worker was that?
18        A.   Carlos Lopez.
19        Q.   Who's in the room with us right now?
20        A.   Yes.  That is correct.
21        Q.   And what did Mr. Lopez tell you?
22        A.   That he was going to find out about the phone
23   of the attorney.
24        ==Q.   When you were a supervisor -- well, let me ask
25   you this.  In this case, there's an allegation that==
```

Page 20

```
 1      Delia's kept two sets of books.  Are you aware of that
 2      allegation?
 3          A.   What books are you referring to?
 4          Q.   I honestly don't know.
 5          A.   Honestly, I don't either.
 6          Q.   Okay.  And certainly as a supervisor, you were
 7      not keeping two sets of books, correct?
 8          A.   No.  Well, it depends.  Because I had -- there
 9      were lots of different kinds of books.  But in this
10      case, you're referring to two sets of books.  I don't
11      know what you're referring to.
12          Q.   What kind of books did you keep?
13          A.   Well, there were different books that I had
14      separately.  Reports, for instance, absenteeism, manager
15      reports, dates of purchases, or expiration dates of
16      certain items.  Different kinds of books like that.
17          Q.   And when you gave the general category of
18      reports, is there a more specific report that you can
19      identify for us?
20          A.   No.
21          Q.   Buy you're not aware of two sets of financial
22      books, correct?
23          A.   Correct.
24          Q.   And you're not aware of any two sets of books
25      regarding pay, correct?
```

```
 1          A.    Correct.
 2          Q.    What was your schedule?
 3          A.    It was practically 24/7.
 4          Q.    So you stayed in the store 24 hours a day, 7
 5    days a week?
 6          A.    Well, no.  But when I left there, I still got
 7    calls because of alarms, reports, and things like that I
 8    had to fix.  And that counts as work.
 9          Q.    Got it.  Okay.  So what was the normal time
10    that you started your day and ended your day?  And I
11    understand people continue calling you, but eventually
12    you say, okay, I'm gonna go home, I'm going to eat, I'm
13    gonna shower, do whatever it is you're gonna do.
14          A.    Usually, I would come in at eight and I would
15    leave at four.  But not all the time.
16          Q.    Okay.  And when you say "usually", what -- what
17    do you mean by "usually"?  How many times a day would
18    you do eight to four?  Or excuse me.  How many times a
19    week would you do eight to four?
20          A.    Well, it would vary.  I didn't have a specific
21    day because I was the only one who actually went home
22    and would come back and check in on the business, and
23    maybe come at closing time.
24          Q.    Okay.  So about how many hours per day would
25    you say you worked?
```

Page 22