```
 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
 2                           MCALLEN DIVISION
 3       JUANA CRUZ, OFELIA             )
         BENAVIDES, JOSE ELIAS          )
 4       N.G, GABRIELA VELAZQUEZ,       )
         HELESIO CRUZ, ANGELICA         )
 5       CHAVEZ, CONCEPCION PEREZ,      )
         OLGA PEREZ, MAVRIGO            )
 6       SAENZ, JORGE MAOLEON,          )
         HECTOR SANCHEZ, HECTOR         )
 7       GONZALEZ, YESSY PEREZ          )
         MARTINEZ, MARIA DE             )
 8       LOURDES CRUZ, RESENDO          )
         LIEVANOS, ELIZABETH LARA,      )
 9       LUIS ALBERTO ZUNIGIA           )
         CASTILLO, MIGUEL               )
10       CABALLERO SANCHEZ, CARLOS      ) CASE NO: 7:23-CV-00343
         DANIEL LOPEZ, GILDA            )
11       RIVAS, ARMANDO MORALES DE      )     JURY DEMANDED
         LLANO, LAZARO GARCIA,          )
12       MARIA DE JESUS MEDINA,         )
         RICHARD ESQUIVEL, RAFAEL       )
13       SANCHEZ, GUILLERMO RUIZ,       )
         ROSA QUINTANILLA,              )
14                                      )
                         PLAINTIFFS,    )
15                                      )
         VS.                            )
16                                      )
         DELGAR FOODS, LLC A/K/A        )
17       DELIA'S TAMALES,               )
                                        )
18                        DEFENDANT.    )
        *********************************************************
19                       ORAL DEPOSITION OF
20                           OLGA PEREZ
21                         June 26, 2024
22      *********************************************************
23              ORAL DEPOSITION of OLGA PEREZ, produced
24      as a witness at the instance of the Defendant, and duly
25      sworn, was taken in the above-styled and numbered cause
```

Page 1

## Page 2

1  on the 26th day of June 2024, from 10:48 a.m. to
2  1:59 p.m., before Priscilla R. Maldonado, CSR, in and
3  for the State of Texas, reported by machine shorthand,
4  at the Law Offices of Ricardo Gonzalez, 124 S. 12th Ave,
5  Edinburg, Texas, pursuant to the Federal Rules of Civil
6  Procedure and the provisions stated on the record or
7  attached.

## Page 4

```
 1                 INDEX
 2                                          PAGE
 3  Appearances...................... 3
 4  OLGA PEREZ
 5      Examination By Mr. Quezada...............  4
 6  Changes and Signature.......................... 81
 7  Reporter's Certification....................... 83
 8
 9              EXHIBITS
10  NUMBER    DESCRIPTION                    PAGE
11  Exhibit 1  Declaration                    75
12  Exhibit 2  Document                       79
```

## Page 3

```
 1         A P P E A R A N C E S
 2  COUNSEL FOR THE PLAINTIFFS:
 3     RICARDO GONZALEZ
        OXFORD & GONZALEZ
 4      124 SOUTH 12TH AVENUE
        EDINBURG, TEXAS 78539
 5      Tel: 956-383-5654
        RIC@OXFORDGONZALEZ.COM
 6
 7  COUNSEL FOR THE DEFENDANT:
 8     STEPHEN J. QUEZADA
        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
 9      500 DALLAS ST., STE 3000
        HOUSTON, TEXAS 77002
10      Tel: 713-655-5757
        STEPHEN.QUEZADA@OGLETREE.COM
11
        LORENA D. VALLE
12      PORTER HEDGES LLP
        1000 MAIN STREET, 36TH FLOOR
13      HOUSTON, TEXAS 77002-6341
        Tel: 713-226-6000
14      LVALLE@PORTERHEDGES.COM
15      ELIZABETH SANDOVAL CANTU
        RAMON WORTHINGTON NICOLAS & CANTU, PLLC
16      1506 SOUTH LONE STAR WAY, SUITE 5
        EDINBURG, TEXAS 78539
17      Tel: 945-294-4800
        ECANTU@RAMONWORTHINGTON.COM
18
19  ALSO PRESENT:
20     NICOLAS GIBLER, INTERPRETER
        MIGUEL CABALLERO, PLAINTIFF
21      LUIS ZUNIGA, PLAINTIFF
        ARMANDO MORALES DE LLANO, PLAINTIFF
```

## Page 5

 1          THE REPORTER:  We are now on the record.
 2  Today is June 26, 2024, and the time is 10:48 a.m.
 3          This is the oral deposition of Olga Perez,
 4  produced at the request of the Defendant in Case No.
 5  7:23-CV-00343, styled Juana Cruz et. al. versus Delgar
 6  Foods, LLC D/B/A Delia's.
 7          My name is Priscilla Maldonado, Texas CSR
 8  12025, representing Veritext.
 9          Would counsel please state their appearance
10  for the record?
11          MR. QUEZADA:  Stephen Quezada, for the
12  Defendant.
13          MR. GONZALEZ:  Ricardo Gonzalez, for the
14  Plaintiffs.
15          MS. VALLE:  Lorena Valle, for the
16  Defendant.
17          OLGA PEREZ,
18  having been first duly sworn, testified through the
19  duly-sworn interpreter as follows:
20              EXAMINATION
21  BY MR. QUEZADA:
22      Q.  Good morning, Ms. Perez.
23      A.  Good morning everyone.
24      Q.  For the record, there are some additional
25  plaintiffs here in the room for us, Armando Morales, the

**Page 10**

1  asked, it's fair to assume that you've understood --
2  understood it, correct?
3     A.  Correct.
4     Q.  What did you do to prepare for today's
5  deposition?
6     A.  My attorney prepared me.
7     Q.  Okay.  And I'm not asking you to tell me what
8  your attorney told you.  Okay?
9     A.  Of course.
10    Q.  Okay.  And so you met with your attorney about
11 the deposition, correct?
12    A.  Correct.
13    Q.  For about how long?
14    A.  Two hours about.
15    Q.  And when and where was that?
16    A.  What day was -- the 19th.
17    Q.  Of this month?
18    A.  Yes.
19    Q.  And for about how long?  Oh, I think you said
20 two hours, right?
21    A.  Yes.
22    Q.  Sorry.  Wrong question.  And where was that?
23    A.  Here.
24    Q.  At the offices we're in right now?
25    A.  Yes.

**Page 11**

1     Q.  Okay.  Did you review any documents in
2  preparation for today's deposition?
3     A.  No.
4     Q.  Other than you and your attorney, was there
5  anyone else there in that preparation?
6     A.  Yes.
7     Q.  And who was that?
8     A.  Five more people.
9     Q.  And who were they?
10    A.  My fellow workers.
11    Q.  Can you tell us their names, please?
12    A.  Luis.
13    Q.  And -- and if you could include their last name
14 also, please?
15    A.  I do not know all of their last names.
16    Q.  Okay.  Fair enough.
17    A.  Miguel, Armando, Ezequiel -- I think.  And who
18 else?  And myself.  But I'm missing one.  Well, then
19 maybe it was just us.
20    Q.  Okay.
21    A.  I don't recall the other person.
22    Q.  Okay.  Did you review any documents in
23 preparation for today's deposition?
24    A.  No.
25    Q.  Have you spoken to anyone, other than your

**Page 12**

1  attorney, about today's deposition?
2     A.  No.
3     Q.  Did you bring any documents with you today?
4     A.  No.
5     Q.  What's your current address?
6     A.  2500 South Ware Road.
7     Q.  Ware?  W-A-R-E?
8     A.  Yes.  W-A-R-E.
9     Q.  And is that a house?
10    A.  It's an apartment.
11    Q.  And what's the apartment number?
12    A.  Number seven.
13    Q.  And is that in Edinburg?
14    A.  McAllen.
15    Q.  And how long have you lived at that address?
16    A.  20 years.
17    Q.  What's the highest education -- what's the
18 highest level of education -- excuse me, that you've
19 achieved?
20    A.  Second semester high school equivalent to
21 Mexico preparatory school.
22    Q.  And why are you suing Delia's?
23    A.  For my dismissal -- my termination.
24    Q.  And that's the only reason, correct?  Treated
25 unfairly?

**Page 13**

1     A.  Well, it was not just my dismissal, but also
2  because I felt discriminated -- and discriminated and
3  treat unfairly.
4        MR. QUEZADA:  Well, she didn't say treated
5  unfairly.  I asked.
6     A.  Yeah.  For me, it was like being fired and
7  discriminated.
8     Q.  (BY MR. QUEZADA)  Okay.  So let me -- let me --
9  any other reason?
10    A.  In my case.
11    Q.  Is there any other reason or -- just those two.
12 It's about the termination and you feeling
13 discriminated, right?
14    A.  Well, at that time, yes.  But the other word
15 that I was looking for -- I felt discriminated but the
16 word I was looking for is -- I felt threatened.
17    Q.  Okay.  So that completes the reasons that
18 you're suing Delia's, correct?
19    A.  Yes.
20    Q.  How did you come to join this lawsuit?
21    A.  Well, for the same reason, you know, that
22 powerlessness that we felt -- well, actually, that I
23 felt powerless.  So that's why I joined this lawsuit.
24    Q.  Well, let me ask you a better question.  Okay?
25    A.  Okay.

**Page 26**

```
 1    Q.  Can you tell us when you had to do that?  Open
 2  the stores.
 3    A.  Well, when I was told to open the store.
 4    Q.  Fair enough.  Let me ask a better question.
 5    A.  Okay.
 6    Q.  Do you recall any dates when you had to open
 7  the store?
 8    A.  Not -- okay.  Well, not the dates, I don't -- I
 9  don't recall.  But in December, for instance, they would
10  ask me to open the door -- I mean, open the store.  But
11  they were not just in December, there were other
12  occasions that they simply ordered me to open the store.
13    Q.  Okay.  If we think -- I guess I don't know that
14  I want to go month by month.  But perhaps, that's the
15  best way of doing it.  Do you think that you opened the
16  store more frequently in December than in other months?
17    A.  No.  It could be any month.
18    Q.  So can you tell us about how many times per
19  month you'd have to open the store?
20    A.  I have no idea.  I don't remember.
21    Q.  Do you recall at what time you would open the
22  store when you would have to?
23    A.  At opening time, at seven.  And before, we used
24  to open at 6:00 a.m.
25    Q.  And that -- would that be the time that
```

**Page 27**

```
 1  customers started coming in or would customers come in
 2  later?
 3    A.  Well, when we opened at seven, they would begin
 4  to come in a little later.  But when we opened at six,
 5  they would come at seven.  So it's about an hour between
 6  the time we open and when the customers come in.
 7    Q.  Okay.  And I guess you had a key to the
 8  restaurant?
 9    A.  That is correct.
10    Q.  Any other tasks or duties as a team leader that
11  we haven't covered?
12    A.  No.  I think that -- that's all.
13    Q.  Okay.  Around 2017, you recall -- did you --
14  I'm sorry.  Let me take a step back.  Did you ever hire
15  or fire any employees?
16    A.  No.
17    Q.  Did you ever discipline employees?
18    A.  No.
19    Q.  Did you ever approve vacation time or anything
20  like that?
21    A.  No.
22    Q.  Okay.  So do you recall in 2017, Delia's
23  started using a timekeeping system?
24    A.  What do you mean timekeeping?
25    Q.  Okay.  So do you recall in 2017, you started
```

**Page 28**

```
 1  using a time clock that you would either punch in with a
 2  code, or use your fingerprint to access?
 3    A.  Oh, yes.
 4    Q.  How -- how would you do that?  Did you use your
 5  fingerprint or a code?
 6    A.  With the fingerprint.
 7    Q.  Did you ever have a code at any time?
 8    A.  To check in?  To punch in?
 9    Q.  To punch in, yes.
10    A.  Not for that.
11    Q.  Okay.  What was it for?  For like the cash
12  register or something like that?
13    A.  Which?
14    Q.  The code.
15    A.  Oh, for the alarm system, when you open up the
16  store.
17    Q.  Got it.  Okay.  And you knew that when you
18  got -- well, when you got to work, you'd punch in with
19  your finger, correct?
20    A.  That's correct.
21    Q.  And when work was done, you'd punch out with
22  your finger as well?
23    A.  That is correct.
24    Q.  Did you have lunch breaks?
25    A.  Yes.  30 minutes.
```

**Page 29**

```
 1    Q.  And when you had that lunch break, you'd punch
 2  out with your finger and the punch back in when it was
 3  over, correct?
 4    A.  Yes.  That is correct.
 5    Q.  Did you have any other breaks during the day?
 6    A.  No.
 7    Q.  The tasks that we discussed as a team leader,
 8  or as a cook, those were tasks that you performed once
 9  you punched in and you performed them until you punched
10  out, correct?
11    A.  That is correct.
12    Q.  And at no time was somebody clocking in or out
13  for you, correct?
14    A.  No.  It is correct.
15    Q.  And you never punched in for anyone or never
16  punched out for anyone?
17    A.  No.
18    Q.  And is that because you knew that Delia's
19  required you to accurately record and report only your
20  time?
21    A.  Yeah.  Each one of us checked individually.
22    Q.  And, again, just to make sure that you
23  understood the question.  You understood that Delia's
24  required you to accurately record and report your own
25  time, correct?
```

8 (Pages 26 - 29)

**Page 30**

1  A. Yes. That's a company rule.
2  Q. And it's a rule that you always followed while
3  working for Delia's, right?
4  A. Of course.
5  Q. And you received training on how to punch in
6  and punch out with the fingerprint system?
7  A. Yes. They taught us.
8  Q. Okay. Do you recall who did that?
9  A. The manager. I don't recall which one of the
10 managers, but it was a manager.
11 Q. And after you received that training, you felt
12 comfortable using the time system?
13 A. Yeah. It was -- it was fine. It was good.
14 Q. Okay. And the system, it was called the Focus
15 system, right?
16 A. I don't know what the name of it was.
17 Q. Okay. Who was your supervisor?
18 A. I had a lot of them. Which one?
19 Q. Who was -- who was the supervisor you had last?
20 A. Jesus Pena.
21 Q. Okay. I feel the same way. Except my bosses
22 are a 5 year old and a 2 year old. Okay. Do you have
23 any records that you kept, be it a calendar or a
24 notepad, of any hours worked by you at Delia's?
25 A. That if I have records?

**Page 31**

1  Q. Yes.
2  A. From now? Or from then? Or before? Or how --
3  or what year?
4  Q. Do you have any records?
5  A. Well, I have all of my check stubs. And all of
6  the schedules and hours are there.
7  Q. Okay. And you've looked at those check stubs?
8  A. Yes. They were mine.
9  Q. And you reviewed them when you received them?
10 A. Yes.
11 Q. And they were accurate and correctly reflected
12 the time worked by you?
13 A. Well, yes. But occasionally the machine would
14 make a mistake and you would be missing hours.
15 Q. That's right. And when those occasions
16 happened, you'd let someone know and it would get fixed;
17 is that right?
18 A. Yes.
19 Q. And you did that every time you noticed an
20 error, correct?
21 A. Of course.
22 Q. And who would you tell? Someone in human
23 resources? Your supervisor?
24 A. The manager.
25 Q. And you never had any problem making that

**Page 32**

1  correction? Meaning you felt comfortable going forward
2  and saying, hey, this correction needs to be made.
3  A. Yes.
4  Q. And you were never told not to do that, right?
5  A. No.
6  Q. No they did not, right?
7  A. No. They never told me.
8  Q. Okay. Before your last supervisor, who was
9  the -- who was your supervisor before the last one? I'm
10 sorry.
11 A. Supervisor?
12 Q. Yes.
13 A. Monica Juarez.
14 Q. And at no point while using the time keeping
15 system were you ever confused about how to use it,
16 correct?
17 A. That's correct.
18 Q. Okay. You mentioned copies of pay stubs. Do
19 you remember that?
20 A. Yes.
21 Q. Where are those?
22 A. At home.
23 Q. Okay. Is there any reason you wouldn't be able
24 to provide those for us?
25 A. Yes. Because their mine.

**Page 33**

1  Q. Okay. Fair enough. Let me ask you this. Any
2  reason why we wouldn't be able to make a copy and give
3  you back the originals?
4  A. Okay. Well, because then my attorney has them.
5  Q. Fair enough. Any other records of time worked
6  that you've got, including anything that you wrote down
7  on a calendar or a notebook? Or is the check stubs all
8  you've got?
9  A. Well, yes. For the earlier years.
10 Q. Okay. And what years would that be?
11 A. Well, from the time when they didn't pay us
12 with a check, and they paid us with cash.
13 Q. And you started receiving a check in 2017,
14 correct?
15 A. No. Some earlier -- some years before, we also
16 received checks.
17 Q. Okay. But in 2017, you only received a
18 paycheck?
19 A. Yes.
20 Q. And that was for all your hours worked?
21 A. Yes.
22 Q. There was no cash payment?
23 A. No. Because they were paying by check, but
24 before, yes.
25 Q. And that was before 2017, correct?

```
 1      I, OLGA PEREZ, have read the foregoing
    deposition and hereby affix my signature that same is
 2  true and correct, except as noted above.
 3
 4
 5         _____
                  OLGA PEREZ
 6
 7
    THE STATE OF TEXAS  )
 8
    COUNTY OF _____ )
 9
         Before me, _____, on
10  this day personally appeared OLGA PEREZ, known to me (or
    proved to me under oath or through
11  _____)(description of identity card or
    other document) to be the person whose name is
12  subscribed to the foregoing instrument and acknowledged
    to me that they executed the same for the purposes and
13  consideration therein expressed.
14         Given under my hand and seal of
    office this _____ day of _____, 2024.
15
16
17  _____
    Notary Public in and for the State of Texas
18
19
20
21
22
23
24
25  Job No. HOU6734283
                                                   Page 82
```

```
 1      I further certify that pursuant to
    FRCP Rule 30(f)(1) that the signature of the deponent:
 2
         __X__ was requested by the deponent or a
 3  party before the completion of the deposition and that
    the signature is to be before any notary public and
 4  returned within 30 days from date of receipt of the
    transcript.  If returned, the attached Changes and
 5  Signature Page contains any changes and the reasons
    therefor;
 6
         _____ was not requested by the deponent
 7  or a party before the completion of the deposition.
 8      I further certify that I am neither
    counsel for, related to, nor employed by any of the
 9  parties or attorney in the action in which this
    proceeding was taken, and further that I am not
10  financially or otherwise interested in the outcome of
    the action.
11
12      Certified to by me this July 11, 2024.
13
14
15      Priscilla Maldonado, CSR 12025
        Expiration Date:  06-30-2025
16      Veritext Legal Solutions
        Firm Registration No. 571
17      300 Throckmorton Street, Suite 1600
        Fort Worth, Texas 76102
18      817-336-3042
19
20
21
22
23
24
25
                                                   Page 84
```

```
               IN THE UNITED STATES DISTRICT COURT
 1              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                      MCALLEN DIVISION
 3   JUANA CRUZ, OFELIA       )
     BENAVIDES, JOSE ELIAS    )
 4   N.G, GABRIELA VELAZQUEZ, )
     HELESIO CRUZ, ANGELICA   )
 5   CHAVEZ, CONCEPCION PEREZ,)
     OLGA PEREZ, MAVRIGO      )
 6   SAENZ, JORGE MAOLEON,    )
     HECTOR SANCHEZ, HECTOR   )
 7   GONZALEZ, YESSY PEREZ    )
     MARTINEZ, MARIA DE       )
 8   LOURDES CRUZ, RESENDO    )
     LIEVANOS, ELIZABETH LARA,)
 9   LUIS ALBERTO ZUNIGIA     )
     CASTILLO, MIGUEL         )
10   CABALLERO SANCHEZ, CARLOS) CASE NO: 7:23-CV-00343
     DANIEL LOPEZ, GILDA      )
11   RIVAS, ARMANDO MORALES DE)    JURY DEMANDED
     LLANO, LAZARO GARCIA,    )
12   MARIA DE JESUS MEDINA,   )
     RICHARD ESQUIVEL, RAFAEL )
13   SANCHEZ, GUILLERMO RUIZ, )
     ROSA QUINTANILLA,        )
14                            )
         PLAINTIFFS,          )
15                            )
     VS.                      )
16                            )
     DELGAR FOODS, LLC A/K/A  )
17   DELIA'S TAMALES,         )
                              )
18       DEFENDANT.           )
    ***********************************************
19
20         REPORTER'S CERTIFICATION
           DEPOSITION OF OLGA PEREZ
21              June 26, 2024
22      I, Priscilla Maldonado, Certified Shorthand
    Reporter in and for the State of Texas, hereby certify
23  to the following:
24         That the witness, OLGA PEREZ, was
    duly sworn by the officer and that the transcript of the
25  oral deposition is a true record of the testimony given
    by the witness;
                                                   Page 83
```

```
 1  RICARDO GONZALEZ
 2  RIC@OXFORDGONZALEZ.COM
 3          July 11, 2024
 4  RE:  Cruz, Juana, Et Al v. Delgar Foods LLC, Et Al.
 5       6/26/2024, Olga Perez (#6734283)
 6      The above-referenced transcript is available for
 7  review.
 8      Within the applicable timeframe, the witness should
 9  read the testimony to verify its accuracy. If there are
10  any changes, the witness should note those with the
11  reason, on the attached Errata Sheet.
12      The witness should sign the Acknowledgment of
13  Deponent and Errata and return to the deposing attorney.
14  Copies should be sent to all counsel, and to Veritext at
15  errata-tx@veritext.com.
16   Return completed errata within 30 days from
17  receipt of testimony.
18   If the witness fails to do so within the time
19  allotted, the transcript may be used as if signed.
20
21
22         Yours,
23         Veritext Legal Solutions
24
25
                                                   Page 85
```