```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
 2                      MCALLEN DIVISION
 3     JUANA CRUZ, OFELIA           )
       BENAVIDES, JOSE ELIAS N.G,   )
 4     GABRIELA VELAZQUEZ,          )
       RICARDO GONZALEZ, HELESIO    )
 5     CRUZ, ANGELICA CHAVEZ,       )
       CONCEPCION PEREZ, OLGA       )
 6     PEREZ, MAVRIGO SAENZ,        )
       JORGE MAOLEON, HECTOR        )
 7     SANCHEZ, HECTOR GONZALEZ,    )
       YESSY PEREZ-MARTINEZ,        )
 8     MARIA DE LOURDES CRUZ,       )
       RESENDO LIEVANOS,            )
 9     ELIZABETH LARA, LUIS         )     CIVIL ACTION
       ALBERTO ZUNIGIA-CASTILLO,    )   NO. 7:23-CV-00343
10     MIGUEL CABALLERO SANCHEZ,    )
       GUILLERMO DE LA              )
11     CRUZ-MENDOZA, CARLOS         )     JURY DEMANDED
       DANIEL LOPEZ, GILDA RIVAS,   )
12     ARMANDO MORALES DE LLANO,    )
       LAZARO GARCIA, MARIA DE      )
13     JESUS MEDINA, RICARDO        )
       ESQUIVEL, RAFAEL SANCHEZ,    )
14     GUILLERMO RUIZ, ROSA         )
       QUINTANILLA,                 )
15                                  )
                 PLAINTIFFS,        )
16                                  )
       VS.                          )
17                                  )
       DELGAR FOODS LLC A/K/A       )
18     DELIA'S TAMALES,             )
                                    )
19               DEFENDANT.         )
20
     **********************************************************
21                    ORAL DEPOSITION OF
22                     ELIAS GUTIERREZ
23                     June 28, 2024
     **********************************************************
24
25
                                                         Page 1
```

Veritext Legal Solutions
346-293-7000

EXHIBIT
A-3

```
 1      ORAL DEPOSITION of ELIAS GUTIERREZ, produced
 2  as a witness at the instance of the Defendant, and duly
 3  sworn, was taken in the above-styled and numbered cause
 4  on the 28th day of June, 2024, from 9:01 a.m. to
 5  10:19 a.m. before Anica Diaz, CSR, RPR, CRR, in and for
 6  the State of Texas, reported by machine shorthand, at
 7  the Law Offices of Ricardo Gonzalez, 124 South 12th
 8  Avenue, Edinburg, Texas, pursuant to the Federal Rules
 9  of Civil Procedure and the provisions stated on the
10  record or attached.
```

Page 2

```
 1                    I N D E X
 2                                              PAGE
 3  Appearances.....................   03
 4  Exhibits........................   04
 5
    ELIAS GUTIERREZ
 6
        Examination by Mr. Quezada.................   05
 7
 8  Changes and Signature...........................   41
 9  Reporter's Certificate..........................   43
10
11
12
13              E X H I B I T S
                                               PAGE
14
    Defendant's Exhibit No. 1
15       Questionnaire Filled out by
         Elias Gutierrez......................   30
```

Page 4

```
 1           A P P E A R A N C E S
 2  COUNSEL FOR THE PLAINTIFFS:
 3      MR. RICARDO GONZALEZ
        OXFORD & GONZALEZ
 4      124 South 12th Avenue
        Edinburg, Texas 78539
 5      Tel: (956) 383-5654
        ric@oxfordandgonzalez.com
 6
 7  COUNSEL FOR DEFENDANT:
 8      MR. STEPHEN J. QUEZADA
        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
 9      500 Dallas Street, Suite 3000
        Houston, Texas 77002
10      Tel: (713) 655-5757
        stephen.quezada@ogletree.com
11
        MS. LORENA D. VALLE
12      PORTER HEDGES, LLP
        1000 Main Street, 36th Floor
13      Houston, Texas 77002-6341
        Tel: (713) 226-6000
14      lvalle@porterhedges.com
15      MS. ELIZABETH SANDOVAL CANTU
        RAMON WORTHINGTON NICOLAS & CANTU, PLLC
16      1506 South Lone Star Way, Suite 5
        Edinburg, Texas 78539
17      Tel: (945) 294-4800
        ecantu@ramonworthington.com
18
19  ALSO PRESENT:
20      Mr. Luis Gonzalez, Interpreter
        Mr. Rosendo Lievanos, Plaintiff
21      Mr. Luis Zuniga, Plaintiff
        Ms. Olga Perez, Plaintiff
```

Page 3

```
 1              P R O C E E D I N G S
 2          (Proceedings began at 9:01 a.m.)
 3          THE REPORTER:  On the record at 9:01 a.m.
 4          Counsel, would you prefer to have me read
 5  the script for a Federal Deposition and then introduce
 6  yourselves, or would you prefer to waive this?
 7          MR. QUEZADA:  We can waive.
 8          MR. GONZALEZ:  We can waive it.
 9          ELIAS GUTIERREZ,
10  having been duly sworn, was called as a witness and
11  testified through an Interpreter as follows:
12                  EXAMINATION
13  BY MR. QUEZADA:
14      Q.  Good morning, Mr. Gutierrez.
15      A.  Good morning.
16      Q.  My name is Stephen Quezada, and I represent
17  Delgar Foods, LLC, which does business as Delia's
18  Tamales.  Do you understand that?
19      A.  Yes.
20      Q.  And today we're here to take your deposition in
21  the case that you've brought against Delia's.
22      A.  Okay.
23      Q.  And you understand that when I say "Delia's"
24  I'm referring to the Defendant in the case, the entity
25  that you're suing?
```

Page 5

2 (Pages 2 - 5)

1    A. Okay.
2    Q. Can you please state your name for the record.
3    A. Jose Elias Navarro Gutierrez.
4    Q. Can you tell us any other names you've gone by
5 please.
6    A. Elias Gutierrez.
7    Q. Mr. Gutierrez, have you ever given a deposition
8 before?
9    A. Not in the United States.
10   Q. In any other country?
11   A. In Mexico.
12   Q. And when did you give a deposition in Mexico?
13   A. Like 23 years ago.
14   Q. And what was that for?
15   A. It was daily.
16   Q. What was it for?
17   A. Investigation depositions.
18   Q. Okay. Mr. Gutierrez, well, today, we are using
19 an interpreter to interpret my questions and your
20 answers from English to Spanish and Spanish to English,
21 correct?
22   A. Okay.
23   Q. And we're using the interpreter so that you can
24 better understand the questions and in your language,
25 correct?

Page 6

1    A. Okay.
2    Q. And we also have a court reporter here today.
3    A. Okay.
4    Q. And the interpreter is interpreting everything
5 we say, and the court reporter is taking down everything
6 we say. And so in order to get the best record today,
7 it's very important for us to wait for the other one to
8 finish speaking, meaning, let me ask the question, and
9 then I'll let you give the answer before the other one
10 starts talking.
11   A. Okay.
12   Q. If there's any question that I ask you today
13 that you don't understand or you want me to clarify,
14 just let me know. Okay?
15   A. Okay.
16   Q. And, similarly, if there is a translation that
17 you don't understand or wish to have clarified, let the
18 interpreter know so that way he can clarify that for you
19 as well. Okay?
20   A. Okay.
21   Q. If you answer a question today, we'll assume
22 that you understood the question and the interpretation;
23 is that fair?
24   A. Okay.
25      (Ms. Olga Perez enters conference room.)

Page 7

1    Q. (By Mr. Quezada) And you understand that
2 although we are in a conference room --
3       MR. QUEZADA: Just for the record, Ms. Olga
4 Perez just arrived.
5    Q. (By Mr. Quezada) And you understand that
6 although we're in your attorney's conference room today,
7 the testimony you're giving is just as if we were in
8 court. Okay?
9    A. Okay.
10   Q. And you understand that the testimony you're
11 giving today is going to be relied upon by the judge and
12 the jury to make decisions in this case?
13   A. Okay.
14   Q. And you understand that you're under oath and
15 what that means, correct?
16   A. Of course.
17   Q. Mr. Gutierrez, what did you do to prepare for
18 today's deposition?
19   A. Nothing.
20   Q. You haven't spoken to anyone about your
21 deposition?
22   A. No.
23   Q. You didn't call or text message anyone about
24 your deposition?
25   A. No.

Page 8

1    Q. Okay. And the other thing I forgot to mention
2 is because we have a court reporter here today, she can
3 only record verbal responses. Okay?
4    A. Okay.
5    Q. So the normal uh-huh, nuh-uh, we -- they just
6 don't work today. Okay?
7    A. Agreement.
8    Q. Did you review any documents in preparation for
9 today?
10   A. No.
11   Q. What is your address?
12   A. Right here.
13      MR. QUEZADA: Okay. Mr. Gutierrez handed
14 me a business card that says Circle T Family Community,
15 and the address is 1820 Clay Tolle, T-O-L-L-E, Street,
16 Mission, Texas 78572.
17   A. (In English) Number 166.
18   Q. Number 166.
19      And for how long have you lived at
20 1820 Clay Tolle?
21   A. That question, can you repeat it?
22   Q. Yes, sir. For about how long have you lived at
23 1820 Clay Tolle?
24   A. Okay. About a year.
25   Q. And before that, where did you live?

Page 9

3 (Pages 6 - 9)

```
 1    A.  In McAllen.  The address is Idela 2024.
 2    Q.  And was that a house or an apartment?
 3    A.  House.
 4    Q.  And for about how long did you live there?
 5    A.  Four years.
 6    Q.  Okay.  And who lives with you at the house on
 7  Clay Tolle, or the -- the, I believe, RV in -- on Clay
 8  Tolle -- let me ask it this way:  Who lives with you at
 9  the Clay Tolle address?
10    A.  My wife.
11    Q.  And what is your phone number?
12    A.  I don't know it.
13    Q.  Do you have a cell phone?
14    A.  Yes.
15    Q.  Do you know who the service provider is?
16    A.  T-Mobile.
17    Q.  And is the phone in your name?
18    A.  No.
19    Q.  In whose name is it?
20    A.  My daughter.
21    Q.  And what is her name?
22    A.  Tanya Navarro.
23    Q.  Can you spell Tanya for us please?
24    A.  T-A-N-Y-A.
25    Q.  And how old is Tanya?
                                                    Page 10
```

```
 1    A.  31 years old.
 2    Q.  And for how long have you had this phone with
 3  T-Mobile?
 4    A.  Like two years and a half.
 5    Q.  And has that whole -- has the phone been with
 6  T-Mobile that whole time?
 7    A.  No, not always.  I've had other phones.
 8    Q.  Oh, okay.  But the one -- the one you've got
 9  today, has that one always been with T-Mobile?
10    A.  Yes.
11    Q.  And have you had that same device for the two
12  and a half years?
13    A.  Yes.
14    Q.  Have you ever been a party in another lawsuit?
15    A.  No.
16    Q.  What is the reason that you're suing Delia's,
17  sir?
18    A.  Well, I was fired unjustified -- in an
19  unjustified manner, and there were 300 other people that
20  were still working there.
21    Q.  So the only reason you're suing Delia's is
22  about the termination of your employment?
23    A.  Okay, yes.
24    Q.  Yes?
25    A.  Yes, I was fired.
                                                    Page 11
```

```
 1    Q.  Sir, do you understand that the reason for your
 2  separation was because the Government notified Delia's
 3  that it could no longer continue employing you?
 4         MR. GONZALEZ:  Objection to the form.
 5    A.  Blanca notified me.  You were there.  I was
 6  never showed a document of why.  I was told verbally and
 7  then Blanca told me I could take other documents and
 8  continue working.
 9         MR. QUEZADA:  Objection; nonresponsive.
10    Q.  (By Mr. Quezada)  My question is just about
11  whether you understood that the Government notified
12  Delia's that it could no longer continue employing you.
13  If you know that, that's my question.
14    A.  Yes.
15    Q.  Okay.  And what's your date of birth?
16    A.  11/30/70.
17    Q.  And you worked at Delia's as a cook; is that
18  right?
19    A.  Yes.
20    Q.  And your dates of employment were
21  February 26th, 2019 until May 2nd, 2023?
22    A.  Yes.
23    Q.  And your hourly pay rate was $9.50?
24    A.  Yes, but then my salary was increased.
25    Q.  Okay.
                                                    Page 12
```

```
 1         MR. QUEZADA:  And I just want to note -- or
 2  clarify, rather, that when he's using the term "sweldo"
 3  or salary, we're talking about an hourly rate.  So I
 4  just want to ask a question to clarify that.
 5    Q.  (By Mr. Quezada)  When you said that your
 6  "sweldo" increased, you mean your hourly rate increased?
 7    A.  I was paid $9.50 per hour.
 8    Q.  And then that hourly rate increased?
 9    A.  Yes.
10    Q.  And then when you worked more than 40 hours in
11  a workweek, you got time and a half that rate, correct?
12    A.  Yes.
13    Q.  And so while you were working for Delia's, it
14  had a time keeping system, correct?
15    A.  Yes.
16    Q.  And that time keeping system required you to
17  punch in and punch out using your fingerprint?
18    A.  Yes.
19    Q.  And at the time you were working for Delia's,
20  you understood that you were required to accurately and
21  correctly punch in and out and record your time,
22  correct?
23    A.  Yes.
24    Q.  And while you were working for Delia's, you
25  followed that policy, correct?
                                                    Page 13
```

```
 1    A. Yes.
 2    Q. And you worked at, I believe, two locations for
 3  Delia's?
 4    A. Yes.
 5    Q. How many locations? Two?
 6    A. Yes.
 7    Q. And at both locations you followed that policy
 8  and practice of clocking in and out correctly?
 9    A. Yes.
10    Q. When you were paid it was on a weekly basis, is
11  that correct?
12    A. Yes.
13    Q. And you received a weekly pay stub?
14    A. Yes.
15    Q. And when you received those pay stubs, would
16  you review them?
17    A. Sometimes.
18    Q. So you had the opportunity to check to make
19  sure that they were accurate; is that fair?
20    A. Yes.
21    Q. And while working for Delia's, you never
22  reported that a check was not accurate; is that correct?
23    A. No.
24    Q. No, you did not? Or, no, that's not, correct?
25    A. I never reported a check.
                                                    Page 14
```

```
 1    Q. And the locations you worked at were McAllen
 2  north and Mission; is that right?
 3    A. Yes.
 4    Q. Okay. What's the highest level of education
 5  that you've completed?
 6    A. Excuse me?
 7    Q. What's the highest level of education that you
 8  completed?
 9    A. My first two years of college.
10    Q. And that was in Mexico?
11    A. Yes.
12    Q. What were you studying?
13    A. I was studying to be an attorney.
14    Q. How did you learn about the lawsuit against
15  Delia's?
16    A. My colleagues.
17    Q. Anyone -- did anyone specific tell you about
18  it?
19    A. Mauricio, but I don't remember his last name.
20    Q. And how did Mauricio tell you about the
21  lawsuit?
22    A. That there was a current lawsuit for
23  unjustified termination.
24    Q. And is that your understanding of why everyone
25  is suing Delia's?
                                                    Page 15
```

```
 1    A. Uh-huh.
 2    Q. Is that a yes?
 3    A. Yes. Sorry.
 4    Q. Did Mauricio tell you by phone or in person?
 5    A. Over the phone.
 6    Q. Do you know whose idea it was to sue Delia's?
 7    A. No.
 8    Q. Can you describe for us your duties that you
 9  did as a cook?
10    A. May I mention them all?
11    Q. Sure. Or I can -- I can walk you through I
12  think what they were.
13    A. Everything referring to the kitchen.
14    Q. Okay. Cleaning the kitchen?
15    A. Yes.
16    Q. Would you wash, peel, and cut vegetables?
17    A. Yes.
18    Q. And meats, if needed?
19    A. Not meats.
20    Q. You'd mix ingredients?
21    A. No.
22    Q. Food handling was part of your duties?
23    A. Yes.
24    Q. Cook the actual food products?
25    A. Yes.
                                                    Page 16
```

```
 1    Q. Wrap up the finished cooked products?
 2    A. Yes.
 3    Q. Put them on trays to put them out for sale?
 4    A. Yes, that too.
 5    Q. Wash trays?
 6    A. Yes.
 7    Q. Wash and clean cooking equipment?
 8    A. Yes.
 9    Q. Sanitize the cooking areas?
10    A. Yes.
11    Q. Cleaning the floors?
12    A. Yes.
13    Q. Help maintain the cooking area to health code
14  standards?
15    A. Yes.
16    Q. Remove items that were not needed, throw away
17  stuff that y'all were done with?
18    A. Yes.
19    Q. Comply with the safety and health standard
20  rules for keeping the food safe?
21    A. Yes.
22    Q. And you did all those things while working at
23  Delia's?
24    A. Yes.
25    Q. And to who did you report?
                                                    Page 17
```

5 (Pages 14 - 17)

```
 1    A. My direct supervisor, McAllen north was Dulce
 2  Palacios and Cassandra Pena.
 3    Q. That was Dulce Palacios?
 4    A. Dulce Palacios.
 5    Q. Did you have any other supervisors?
 6    A. Yes.
 7    Q. Okay. Were those the only two immediate?
 8    A. Yes. They're the managers.
 9    Q. Did you have a kitchen lead or a team lead that
10  you reported to?
11    A. Yes.
12    Q. And who was that?
13    A. Juana Perez. The other name is Rosario, and I
14  don't quite remember the rest.
15    Q. And the direct supervisors that you just
16  provided for us, I believe you said that was at the
17  McAllen location?
18    A. Yes.
19    Q. Did you have different people you reported to
20  at the other location in Mission?
21    A. Yes.
22    Q. And who were they?
23    A. Rosendo. And I don't remember the name of the
24  other person.
25    Q. And that's Rosendo Lievanos who's here with us
                                                   Page 18
```

```
 1  today?
 2    A. Yeah.
 3    Q. Yeah. Did you have team leads or kitchen leads
 4  in Mission?
 5    A. Yes.
 6    Q. And who were they?
 7    A. Mauricio and Jose Jimenez.
 8    Q. The duties that we described earlier, you
 9  recall those?
10    A. Of course.
11    Q. All that work you did during the workday,
12  correct?
13    A. Yes.
14    Q. And you do that work between the time you
15  punched in and the time you punched out, correct?
16    A. Yes.
17    Q. What was it specifically that you were cooking?
18    A. Tamales.
19    Q. Anything else?
20    A. Menudo.
21    Q. Anything else?
22    A. Green sauce and red sauce.
23    Q. Other than a cook, did you hold any other
24  positions with Delia's?
25    A. No, just cook.
                                                   Page 19
```

```
 1    Q. There was never a time where you asked Delia's
 2  to change the amount of a paycheck or the amount of time
 3  on a paycheck; is that correct?
 4    A. No.
 5    Q. No, you did not?
 6    A. No.
 7    Q. Did your job duties change over time or remain
 8  the same?
 9    A. They changed over time.
10    Q. And how did they change?
11    A. A little more strict with us.
12    Q. But what about your duties, did the duties
13  change?
14    A. No. Those were the same.
15    Q. Were you provided any instruction on how to use
16  the time keeping system?
17    A. Yes.
18    Q. And who provided you that instruction?
19    A. My supervisor.
20    Q. And what was your supervisor's name who
21  provided the training?
22    A. Rogelio Castorena.
23    Q. And the training he provided you was sufficient
24  for you to understand how to clock in and clock out,
25  correct?
                                                   Page 20
```

```
 1    A. Yes.
 2    Q. And that was the Focus system, correct, the
 3  time keeping system was the Focus system?
 4    A. Yes.
 5    Q. Do you have any calendars or logs or notes that
 6  reflect any record of time worked by you for Delia's?
 7    A. Just the computer.
 8    Q. And that's the time keeping system at Delia's,
 9  right?
10    A. Yes.
11    Q. So that time keeping system is the best record
12  of hours worked by you at Delia's, right?
13    A. I think so.
14    Q. Were you on the morning shift, or the afternoon
15  shift, or did you rotate between both of them?
16    A. I would change.
17    Q. Okay. Did you have any particular cadence of
18  how you would change?
19    A. No. It was all the same. Morning and
20  afternoon.
21    Q. Your schedule, did you set your own schedule or
22  were you told when you needed to work?
23    A. We had a scheduler.
24    Q. You had a schedule or a scheduler?
25    A. They made the schedule.
                                                   Page 21
```

6 (Pages 18 - 21)

```
 1      I, ELIAS GUTIERREZ, have read the foregoing
 2  deposition and hereby affix my signature that same is
 3  true and correct, except as noted above.
 4
 5
 6      _____
 7           ELIAS GUTIERREZ
 8  THE STATE OF TEXAS)
 9  COUNTY OF _____)
10      Before me, _____, on
11  this day personally appeared ELIAS GUTIERREZ, known to
12  me (or proved to me under oath or through
13  _____) (description of identity card or
14  other document) to be the person whose name is
15  subscribed to the foregoing instrument and acknowledged
16  to me that they executed the same for the purposes and
17  consideration therein expressed.
18      Given under my hand and seal of office this
19  _____ day of _____, 2024.
20
21      _____
22          Notary Public in and for
23          The State of Texas
24
25
```
Page 42

```
 1          IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
 2                    MCALLEN DIVISION
 3  JUANA CRUZ, OFELIA       )
    BENAVIDES, JOSE ELIAS N.G,)
 4  GABRIELA VELAZQUEZ, RICARDO)
    GONZALEZ, HELESIO CRUZ,  )
 5  ANGELICA CHAVEZ, CONCEPCION)
    PEREZ, OLGA PEREZ, MAVRIGO)
 6  SAENZ, JORGE MAOLEON,    )
    HECTOR SANCHEZ, HECTOR   )
 7  GONZALEZ, YESSY          )
    PEREZ-MARTINEZ, MARIA DE )
 8  LOURDES CRUZ, RESENDO    )
    LIEVANOS, ELIZABETH LARA,)
 9  LUIS ALBERTO        ) CIVIL ACTION
    ZUNIGIA-CASTILLO, MIGUEL ) NO. 7:23-CV-00343
10  CABALLERO SANCHEZ,       )
    GUILLERMO DE LA          )
11  CRUZ-MENDOZA, CARLOS DANIEL)   JURY DEMANDED
    LOPEZ, GILDA RIVAS, ARMANDO)
12  MORALES DE LLANO, LAZARO )
    GARCIA, MARIA DE JESUS   )
13  MEDINA, RICARDO ESQUIVEL,)
    RAFAEL SANCHEZ, GUILLERMO)
14  RUIZ, ROSA QUINTANILLA,  )
                             )
15       PLAINTIFFS,         )
                             )
16  VS.                      )
                             )
17  DELGAR FOODS LLC A/K/A   )
    DELIA'S TAMALES,         )
18                           )
        DEFENDANT.           )
19  *********************************************
20          REPORTER'S CERTIFICATION
            DEPOSITION OF ELIAS GUTIERREZ
21              June 28, 2024
22      I, Anica Diaz, Certified Shorthand Reporter in
    and for the State of Texas, hereby certify to the
23  following:
24      That the witness, ELIAS GUTIERREZ, was duly
    sworn by the officer and that the transcript of the oral
25  deposition is a true record of the testimony given by
```
Page 43

```
    the witness;
                                    44
 1      I further certify that pursuant to FRCP Rule
    30(f)(1) that the signature of the deponent:
 2
        __X__ was requested by the deponent or a party
 3  before the completion of the deposition and that the
    signature is to be before any notary public and returned
 4  within 30 days from date of receipt of the transcript.
    If returned, the attached Changes and Signature Page
 5  contains any changes and the reasons therefor;
 6      ____ was not requested by the deponent or a party
    before the completion of the deposition.
 7
        I further certify that I am neither counsel
 8  for, related to, nor employed by any of the parties or
    attorney in the action in which this proceeding was
 9  taken, and further that I am not financially or
    otherwise interested in the outcome of the action.
10
        Certified to by me this 10th day of July, 2024.
11
12
13
14
15
        Anica Diaz, Texas CSR(6021), RPR, CRR
16      Expiration Date:  08-31-24
        Veritext Legal Solutions
17      Firm Registration No. 571
        300 Throckmorton Street, Suite 1600
18      Fort Worth, Texas 76102
19
20
21
22
23
24
25
```
Page 44

```
 1  Ricardo GOnzalez - ric@oxfordandgonzalez.com
 2              July 10, 2024
 3  RE: Cruz, Juana, Et Al v. Delgar Foods LLC, Et Al.
 4  DEPOSITION OF: Elias Gutierrez (# 6734289)
 5      The above-referenced witness transcript is
 6  available for read and sign.
 7      Within the applicable timeframe, the witness
 8  should read the testimony to verify its accuracy. If
 9  there are any changes, the witness should note those
10  on the attached Errata Sheet.
11      The witness should sign and notarize the
12  attached Errata pages and return to Veritext at
13  errata-tx@veritext.com.
14      According to applicable rules or agreements, if
15  the witness fails to do so within the time allotted,
16  a certified copy of the transcript may be used as if
17  signed.
18              Yours,
19              Veritext Legal Solutions
20
21
22
23
24
25
```
Page 45

12 (Pages 42 - 45)