United States District Court
Southern District of Texas
**ENTERED**
September 30, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

| | | |
|---|---|---|
| Juana Cruz, et al., | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. M-23-343 |
| | § | |
| Delgar Foods, LLC | § | |
| d/b/a Delia's Tamales, | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Delgar Foods, LLC's Motion for Final Summary Judgment. ECF No. 49. The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes, including entry of final judgment. ECF No. 26. The motion is **GRANTED in part and DENIED in part**.

### 1. Facts and Procedural Posture

This lawsuit is brought against Delgar Foods, Inc. d/b/a Delia's Tamales (Delia's) by several of Delia's former employees.[1] Plaintiffs originally filed suit in state court in Hidalgo County, Texas on August 31, 2023. ECF No. 1-2. The Original Petition in state court alleged a scheme whereby Delia's would assist Plaintiffs in obtaining false social security numbers so they could obtain employment. *Id.* at 3. Plaintiffs alleged that Delia's would

---

[1] The remaining Plaintiffs are Gabriela Velasquez, Concepcion Perez, Maria Jesus Lopez Medina, Gilda Rivas, Lazaro Garcia, Elias Gutierrez, Elizabeth Lara, Olga Perez, Hector Sanchez, Maria de Lourdes Cruz, Ricardo Esquivel, Mauricio Sanchez, Juana Cruz de la Cruz, Guillermo Ruiz, Ofelia Benavidez, Miguel Caballero, Angelica Chavez, Melesio Cruz, Yessy Perez, Rafael Sanchez, Rosa Quintanilla/Quintana, Carlos Lopez, Hector Gonzalez, Jorge Mauleon, Rosendo Lievanos, Luis Zuniga, and Armando Morales. The court notes that some Plaintiffs' names are inconsistent in various filings (e.g., Rosa Quintanilla appears as Rosa Quintana in various documents).

take illegal Social Security deductions from Plaintiff's paychecks, which would then be returned to Delia's, given that the Social Security numbers under which Plaintiffs were working were fake. *Id.* Plaintiffs also alleged that Delia's would discriminate against them based on their age by terminating Plaintiffs as soon as they neared retirement age. *Id.* Plaintiffs brought causes of action for "age discrimination," "fraud," and "threats and intimidation." *Id.* at 4. Delia's removed the case to federal court based on federal question jurisdiction on October 6, 2023. ECF No. 1 (stating that Plaintiffs' allegations fall under two federal statutes—ADEA and Title VII).

On November 27, 2023, Plaintiffs filed their First Amended Complaint. ECF No. 7. In the first paragraph of that document, Plaintiffs state that "[t]his civil filing [filed in state court and removed to federal court] appears to be a Fair Labor Standards Act Lawsuit." *Id.* at 2. Plaintiffs allege in the next paragraph that "by drilling down into the facts of the case it becomes apparent that this case is about human trafficking." *Id.* The complaint then goes on to detail how illegal immigrants who are brought illegally to the United States look for work and then are "subjects of exploitation by their unscrupulous employer." *Id.* at 3. Such exploitation includes failure to pay minimum wage and/or overtime. *Id.* All of that said, Plaintiffs brought only a single cause of action—failure to pay overtime under the Fair Labor Standards Act (FLSA).

On December 15, 2023, Plaintiffs filed another document titled First Amended Complaint (FAC). ECF No. 15. This is the operative pleading in the case. In the second FAC, Plaintiffs appear to abandon many of the salacious details included in earlier pleadings and allege a typical set of facts to support a claim for

unpaid overtime under the FLSA.[2] Plaintiffs did not seek to certify a class in the FAC, and indicated in their December 15, 2023 Joint Discovery and Case Management Plan that they did not intend to seek to certify a class and did not intend to add any new parties. ECF No. 16 at 2–3.

While this case has not been certified as a class, the Plaintiffs fall into two categories. All Plaintiffs allege that they were not paid time and one-half for all the hours they worked in excess of forty in many, if not all, weeks they worked for Delia's. With respect to seven of the Plaintiffs,[3] Delia's argues that they were exempt from the FLSA's overtime requirements as bona fide executive employees. The court will refer herein to the Plaintiffs for whom no claim of an exemption is made as the "hourly" employees, and the others as the "exempt" employees.

The court turns first to the general facts and evidence pertaining to the hourly employees. Most of the hourly employees worked for Delia's for many years. Delia's has presented evidence that it uses an automated timekeeping system to track its hourly employees' hours. ECF No. 49-12 at 2. With its motion for summary judgment, Delia's also submitted pay stubs from one pay period in December 2020 for every Plaintiff. ECF No. 49-11. The pay stubs show each Plaintiff's regular hours worked, overtime hours, and any vacation or holiday hours. The pay stubs also show

---

[2] On August 7, 2024, Plaintiffs sought again to amend their complaint to include the human trafficking allegations. Plaintiffs at that time sought class certification and sought leave to amend to add many new causes of action. ECF No. 44-1. The court denied leave to amend. ECF No. 48. Plaintiffs brought a new lawsuit in state court, which was removed to federal court. *See Cruz, et al. v. Garza, et al.*, No. 7:25-CV-15 (S.D. Tex.). That case has been referred to the undersigned magistrate judge, is subject to a separate schedule, and will not be discussed further in this Order.

[3] Those seven are Rosa Quintanilla, Carlos Lopez, Hector Gonzalez, Jorge Mauleon, Rosendo Lievanos, Luis Zuniga, and Armando Morales.

that Plaintiffs were paid time and one-half for overtime hours that they worked in that pay period.

Overall, Plaintiffs' evidence of their time worked and missing pay is vague and conclusory. There are four general categories of evidence that the parties submitted: depositions, affidavits, declarations, and responses to requests for admissions. The court considers each category in turn.

The parties provided six depositions to the court. Three hourly employees were deposed (Elias Gutierrez, Olga Perez, and Miguel Caballero) and three exempt employees were deposed (Rosendo Lievanos, Luis Zuniga, and Armando Morales). *See* ECF No. 50-1 at 1–119. Hourly Plaintiffs' depositions support the proposition that Plaintiffs were paid the overtime hours they worked. They each testified that they used their fingerprint or a unique password to punch in and out of work and that it was Delia's policy that they were to correctly record the time they worked. ECF No. 49-2 at 4–5; ECF No. 49-4 at 4–5; ECF No. 49-6 at 4.

Plaintiffs provided nineteen affidavits to the court. Twelve affidavits are in Spanish without an English translation. The remaining seven affidavits are in English or include an English translation. Of the English affidavits, three are by hourly employees (Olga Perez, Angelica Chavez, and Ofelia Benavides). Two English affidavits are by exempt employees (Rosa Quintanilla and Hector Gonzalez). Two English affidavits are from Patricia Conde-Gonzalez and Norma Conde Alaniz, who filed a joint stipulation of dismissal of their claims under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). ECF No. 39; ECF No. 50-1 at 135–40.

The hourly employees' affidavits generally discuss pay practices well outside the three-year limitations period or in the

vaguest of terms.[4] For example, Olga Perez's affidavit states she worked "60 to 80 hrs a wk," but seems to be referring to the years 2009–2010. ECF No. 50-1 at 19. She says she was not paid overtime when she received her "weekly cash envelope," *id.*, but that appears to refer to a time before 2017, when the fingerprint timekeeping system was introduced. All three hourly employees' affidavits are similar. They do not provide any specific facts about hours that they worked for which they were not compensated.

Plaintiffs' hand-written declarations are similarly unspecific. The declarations were turned over in response to the court's March 8, 2024 order. ECF No. 31. The court required that Plaintiffs provide a declaration describing each Plaintiff's position, duties, hours worked, and payments received. *Id.* The responses are, in general, extremely vague as to time, pay rate, hours worked, and amounts received. ECF No. 49-9. For example, Rafael Sanchez says he worked for Delia's between 2008 and May 2023. *Id.* at 4. He says he worked "5 am to 10:00 pm Avg. 118 hrs per wk." *Id.* He states his rate of pay was $9.25 per hour. *Id.* He does not say when he earned that pay rate or exactly when he worked those hours. He does not say he was not paid overtime. Most, if not all, of the court-ordered declarations include the same lack of detail or specificity.

Many of the declarations also have significant internal inconsistencies. For example, Ofelia Benavides states that she was paid "$45 per day 15 hrs a day," but also that she earned "$11.50 per hr." ECF No. 49-9 at 15. The pay records show that Ofelia

---

[4] "FLSA claims are subject to a two-year statute of limitations for ordinary violations and a three-year period for willful violations." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015) (citing 29 U.S.C. § 255(a)). Assuming, without deciding, willfulness, the relevant period is three years prior to Plaintiffs' Original Petition filed on August 31, 2023. The relevant period is August 31, 2020 through August 31, 2023.

Benavides did make $11.50 per hour, but also that she was paid $14,145 in overtime during 2020. ECF No. 49-11 at 2. These sorts of inconsistencies and omissions exist throughout the evidence Plaintiffs provided to the court.

The court turns to Plaintiffs' responses to Delia's requests for admissions. ECF No. 49-10. Several of Plaintiffs' responses to requests for admission support Delia's position that Plaintiffs were paid overtime. For example, at least two Plaintiffs (Maria De Lourdes Cruz and Mauricio Sanchez) admitted in their responses to requests for admissions that Delia's correctly paid them for all their hours worked from 2020–2023. ECF No. 49-10 at 112–13, 122–24. Although Plaintiff Angela Chavez denied that Delia's paid her time and one-half for overtime hours, she nonetheless admitted that Delia's correctly paid her for all hours worked from 2020–2023; that she recorded all the hours she worked in the timekeeping system; that she reviewed her pay and hours on a weekly basis to confirm their accuracy; and that Delia's paid her overtime between 2020 and 2023. ECF No. 49-10 at 4–5.

As the court stated above, and as will be discussed in detail herein, hourly Plaintiffs' evidence of their time worked and missing pay is vague and conclusory.

The court turns next to the seven employees that Delia's claims are exempt from the FLSA's overtime rules. These employees fall into two categories—managers and supervisors.[5] Sofia Lubin, the Chief Executive Officer of Delia's, states in her declaration that both managers and supervisors are compensated on a salary basis without regard to the number of hours they work per week. ECF No. 49-12 at 1. Lubin states that managers are assigned to a single location, and their primary duty is to oversee

---

[5] In the management hierarchy at Delia's, supervisors are above managers, which are above team leaders. ECF No. 50-1 at 23.

the daily operations of the business. *Id*. Managers supervise employees, train new and current employees, and recommend disciplinary actions and terminations of employees. *Id*. Managers also organize the shift schedule, monitor attendance, assign duties, and handle customer complaints. *Id*.

Three exempt employees (Rosendo Lievanos, Luis Zuniga, and Armando Morales) were deposed. Rosendo Lievanos and Armando Morales testified that they could hire and fire employees or recommend that an employee be hired or fired. ECF No. 50-1 at 23–25, 107–08. Lievanos would also enforce store policies, handle customer complaints, discipline employees, give performance evaluations, and recommend raises. *Id*. at 108–10. Luis Zuniga denied being able to hire employees or interview prospective employees. ECF No. 50-1 at 72. Nor did he ever make a recommendation to hire or fire any employee. *Id*. at 73.

The remaining exempt employees state that they had varying degrees of authority and varying responsibilities in their roles. The court considers the evidence for each exempt employee in more detail in its analysis.

The court finds that, as explained in detail below, Delia's motion is **GRANTED** as to all but three Plaintiffs. Delia's motion is **DENIED** as to liquidated damages.

### 2. Motion to Strike

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'"). Declarations are competent summary judgment evidence if they are "made on personal knowledge, set out facts that would be

admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Before reaching Delia's arguments about why Plaintiffs' evidence should be stricken, the court first addresses the many affidavits that were only submitted to the court in Spanish. *See, e.g.,* ECF No. 50-1 at 64, 89, 120–121, 124–25, 128–34. Foreign documents unaccompanied by English translations are not competent summary judgment evidence. *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 369 (5th Cir. 2022); *see also Unified Buddhist Church of Vietnam v. Unified Buddhist Church of Vietnam*, 838 F. App'x 809, 813 (5th Cir. 2020) (stating that foreign documents must typically be translated to English to be considered by the court). The party providing the evidence is typically responsible for providing a translation to the court. *Garza Rodriguez v. Escamilla Lara*, No.13-CV-077, 2013 WL 12109029 (W.D. Tex. Oct. 25, 2013). Courts often strike untranslated evidence. *See Wells v. Comercializadora Salazar Rodriguez S de Rl de CV*, No. 24-CV-320, 2024 WL 2194858 (W.D. Tex. May 15, 2024); *Weathered v. Family Dollar Stores of Tex. LLC*, No. 22-CV-2409, 2023 WL 8628929 (N.D. Tex. Nov. 27, 2023), *R. & R. adopted*, No. 22-2409, 2023 WL 8627816 (N.D. Tex. Dec. 13, 2023). Thus, the untranslated documents written in Spanish in ECF No. 50-1 are **STRICKEN** and are not considered by the court.

Delia's moves to strike Plaintiffs' summary judgment evidence for several reasons. Delia's argues that it could not obtain depositions for each Plaintiff because the court "designated a bellwether population of 6 plaintiffs to be presented for depositions." ECF No. 51 at 5. Delia's argues that Plaintiffs' summary judgment evidence should thus be limited to the six "bellwether" or "discovery" Plaintiffs. *Id.* Delia's argument is incorrect.

The court held several hearings on discovery. The parties raised several discovery issues. In response to one of the matters raised, the court held a hearing on March 8, 2024. ECF No. 31. At the hearing, the court ordered that Plaintiff's counsel would provide a declaration under oath signed by each Plaintiff to include information including their position with Delia's, their duty, their dates of employment, their pay rate, and how much they were paid. *Id.* Thereafter, the parties filed a status report discussing the state of discovery and the need for depositions. ECF No. 33. Delia's complained about the lack of information set forth in the Plaintiffs' declarations, and on that basis asked for leave to depose "at least 20 plaintiffs." *Id.* at 2. The court held a hearing on the status report on May 7, 2024.

The parties did not obtain a transcript of the May 7, 2024 hearing, but the court listened to the recording of the hearing, which the parties are welcome to obtain for themselves. The court never limited the number of depositions that the parties could conduct. Instead, the court encouraged the parties to start with depositions of those witnesses that may shed the most light on the facts, such as a Rule 30(b)(6) witness that could discuss how Delia's kept its records. The court ordered the parties to be "strategic" in determining which depositions to conduct.

Ultimately, the court recognized that no class had been certified and that the parties were entitled to individualized discovery as to each Plaintiff. In that regard, the court specifically told the parties that it would not "micro-manage" their depositions, that the parties must "work with each other," and that the parties should come back to the court if they could not reach an agreement. The court's written Minute Entry Order summarizing the court's rulings states that "[t]he parties shall confer and cooperate in formulating an optimal deposition schedule." ECF No. 36.

Accordingly, Defendant's contention that the court "designated a bellwether population of 6 plaintiffs to be presented for depositions" is incorrect. The parties never came back to the court for any further rulings on the permissible scope of depositions. The court did not preclude Delia's from conducting depositions. Thus, Delia's objections on that basis are **OVERRULED**.

Delia's moves to strike Plaintiffs' affidavits because they are not made on personal knowledge, do not set out facts that would be admissible in evidence, and do not show that the affiant or declarant is competent to testify on the matters stated. ECF No. 51 at 5–6. Even considering all of Plaintiffs' evidence, Delia's motion must still be granted as to all but three of the twenty-seven Plaintiffs. Thus, as to all but the remaining three Plaintiffs, Delia's objections are **DENIED as MOOT**.

As to the remaining three Plaintiffs, (Rosa Quintanilla, Hector Gonzalez, and Luis Zuniga) Delia's argues that Plaintiffs' statements about how much money they made, how they were paid, their job duties, and their beliefs about why they earned a salary instead of hourly wages are inadmissible as unsubstantiated, conclusory allegations. ECF No. 51 at 8–9. Delia's also argues that Zuniga's statement that he had no authority to hire or fire is attorney argument. *Id.* at 7. Delia's arguments are not persuasive. Plaintiffs' statements are reasonably based on their personal knowledge and their experience at Delia's. Delia's objections are **OVERRULED**.

Finally, Delia's argues that the translated affidavits of Patricia Conde and Norma Conde, ECF No. 50-1 at 135–40, should be stricken because they are no longer parties to this case. ECF No. 51 at 5–6. It is true that Plaintiffs Patricia Conde-Gonzalez and Norma Conde Alaniz filed a joint stipulation of dismissal of their claims under Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

ECF No. 39. The consideration of these affidavits does not affect the resolution of the case. Neither affidavit raises a material fact issue during the relevant period. ECF No. 50-1 at 136 (stating that Patricia Conde was terminated from Delia's in 2010); *id.* at 139 (stating that Norma Conde did not earn overtime pay beginning in 2004 for "several years," but failing to address any overtime pay issues between 2020 and 2023). Thus, Delia's objection on this ground is **DENIED as MOOT**.

### 3. *Summary Judgment Standard*

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. Fed. R. Evid. 56(c). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018). A fact is material "if and only if proof of its existence might affect the outcome of the case." *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine [dispute] of material fact." *MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 368 (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

In cases brought under the FLSA, "[t]he 'employer bears the burden of proving that employees are exempt.'" *Miller v. Travis Cnty., Tex.*, No. 16-CV-1196, 2018 WL 1004860, at *4 (W.D. Tex. Feb. 21, 2018) (quoting *Dalheim v. KDFT–TV*, 918 F.2d 1220, 1224 (5th Cir. 1990)). "If a party moving for summary judgment 'bears

the burden of proof at trial, then its burden of production is greater.'" *Miller*, 2018 WL 1004860, at *4 (quoting 10A WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 2727.1 (4th ed. Apr. 2017)). Therefore, "[t]o meet their summary judgment burden, then, Defendant[] must produce sufficient evidence to be entitled to judgment with respect to every bona fide executive factor, if the evidence were uncontroverted at trial." *Id.* (citing *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 360 (5th Cir. 2010)).

When ruling on a motion for summary judgment, the court views all facts and inferences in the light most favorable to the nonmoving party and resolves all disputed facts in favor of the nonmoving party. *Rodriguez v. City of Laredo*, 459 F. Supp. 3d 809, 814 (S.D. Tex. 2020). The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Id.* (quoting *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 150 (2000)).

"Summary judgment cannot be defeated through '[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation.'" *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

Plaintiffs have not clearly identified in their response *specific evidence* in the record nor articulated precisely how that evidence supports their claims. Plaintiffs incorporated by reference more than 100 pages of evidence and stated that the court should "review the affidavits and deposition testimony." ECF No. 50 at 5. The court could grant the pending motion for that reason alone. Instead, because it is not voluminous, the court has conducted an evaluation of all the evidence presented to it.

### 4. Analysis

#### a. The FLSA's Overtime Requirement

Under 29 U.S.C. § 207(a)(1), employees must be paid for all hours worked in excess of forty in a workweek at a rate of not less than one and one-half their regular rate of pay. *Von Friewalde v. Boeing Aerospace Ops., Inc.*, 339 F. App'x. 448, 453 (5th Cir. 2009). The FLSA also requires that employees be paid for all the hours they work. *Id.* To make a prima facie case for unpaid overtime work, the plaintiff must show: (1) an employment relationship with the defendant; (2) coverage under the FLSA; (3) the employer's violation of the FLSA's overtime compensation requirements; and (4) the amount of overtime compensation due. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (citation omitted).

An employer who knows its employee is working overtime cannot allow the work to be performed without paying overtime, even if the employee does not make a claim for overtime compensation. *Harvill v. Westward Comms., L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). On the other hand, an employer's failure to pay overtime does not violate the FLSA if the employee fails to notify the employer or deliberately prevents the employer from knowing about the overtime hours. *Id.*

It is the employee's burden to demonstrate that he or she worked overtime that was not properly compensated. *Harvill*, 433

F.3d at 441. It then becomes the employer's burden to come forward with evidence of the number of hours actually worked or evidence that negates inferences to be drawn from the employee's evidence. *Oti v. Green Oaks SCC, LLC*, No. 4:13–CV–816–A, 2015 WL 329216, at *3 (N.D. Tex. Jan. 23, 2015). In cases where the employer has failed to maintain records of the employee's hours, the employee's recollection of the number of hours worked will be sufficient. *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 363 (5th Cir. 2023). On the other hand, when the employer keeps time records showing the hours its employees worked, the employee must come forward with definite and certain evidence showing the number of unpaid overtime hours worked. *Id.* at 364 (citing *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 454–46 (S.D. Tex. 2011)).

### b. Hourly Employees

With the foregoing principles in mind, it is apparent that none of the hourly employees can carry their burden in this case. As discussed above, the hourly employees' claims about the hours they worked are vague and inexact. None of them makes any real effort even to specify that they worked overtime during the relevant three-year period. None of them makes clear that they were not actually paid overtime for any specific amount of hours worked. The evidence to the contrary is quite specific, however.

Plaintiffs argue that the more lenient prima facie burden applies under *Anderson v. Mt. Clemens Pottery Company*, 328 U.S. 680 (1946) (creating a burden-shifting rule that applies when an employer has failed to keep records, or where such records are "inaccurate or inadequate"). ECF No. 50 at 13. As to the hourly employees, Plaintiffs are incorrect. If an employer keeps records of Plaintiffs' time, each Plaintiff must present definite and certain evidence showing that they performed work for which they were not properly compensated to satisfy their prima facie burden.

*Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 362–64 (5th Cir. 2023); *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 545 (S.D. Tex. 2011).

It is undisputed that Delia's kept time records showing the hours its employees worked. *See* ECF No. 49-11 (Delia's "samples" of pay stubs); *see also* ECF No. 49 at 12 n.33 (stating that "The time records and pay stubs that are made, kept and preserved by Delia's were produced by Delia's"). Delia's presented evidence that it uses an automated timekeeping system to track its employees' hours. ECF No. 49-12. Delia's also submitted pay stubs from one pay period in December 2020 for every Plaintiff. ECF No. 49-11. The pay stubs show the number of regular hours worked, number of overtime hours worked, and any holiday hours. The pay stubs also show that Plaintiffs were paid time and one-half for each overtime hour they worked in that pay period. Most Plaintiffs earned thousands of dollars in overtime pay in 2020. *See, e.g., id.* at 1–10.

Plaintiffs' deposition testimony also confirms that Delia's kept automated timekeeping records. Plaintiff Olga Perez testified that she would punch in and out at the beginning and end of her shifts and for lunch breaks using her fingerprint. ECF No. 49-2 at 4. She verified that no one would punch in or out for her, and that Delia's required her to accurately record her time in that manner. *Id.* She further verified that she followed Delia's company policy for timekeeping while she worked there. *Id.* Perez further stated that she had all of her check stubs and that "all of the hours are there." *Id.* at 5. She did note that sometimes the machine would make an error, in which case she would have the error corrected by the manager. *Id.*

Plaintiff Elias Gutierrez testified that Delia's paid him time and one-half for the hours he worked over forty in a week. ECF No. 49-4 at 4. He also testified that he would use his fingerprint to

punch in and out for work; that it was Delia's policy for employees to correctly record their time; and that he followed that policy while he worked for Delia's. *Id.* at 4–5. Gutierrez further confirmed that he performed all of his work duties between the times he punched in and out for work. *Id.* at 6.

Plaintiff Miguel Caballero's testimony was similar. He testified that he punched in and out using his fingerprint before and after his shift and while on break. ECF No. 49-6 at 4. He confirmed that his work duties were performed while on the clock. *Id.* at 5. He would generally punch in and out himself. The only time that management would do that for him was when he forgot to do so. *Id.* He confirmed that he used the timekeeping system to correctly and accurately record his time. *Id.* He further confirmed receiving overtime pay for all the hours he worked over forty in a week, at least for the period after 2017, when the timekeeping system was installed. *Id.* at 7.

Plaintiffs' responses to requests for admission generally support Delia's position that Plaintiffs recorded their time on the timekeeping system and that they were paid overtime. For example, Plaintiff Angela Chavez denied that she was paid time and one-half for all the hours she worked from 2020 to 2023, but admitted that she recorded all the hours she worked in the timekeeping system; that she complied with Delia's requirement that she accurately record all of her hours; that she reviewed her pay and hours on a weekly basis to confirm their accuracy; and that Delia's paid her overtime between 2020 and 2023.[6] ECF No. 49-10 at 4–5. The same is true for several other Plaintiffs[7]

---

[6] The same is true for Conception Perez, ECF No. 49-10 at 13–15; Gilda Rivas, *id.* at 43–45; and Hector Sanchez, *id.* at 73–75.

[7] Including Gabriela Velasquez, ECF No. 49-10 at 33–35; Conception Perez, *id.* at 13–15; Maria Jesus Lopez Medina, *id.* at 102–105; Gilda Rivas, *id.* at 43–45; Elizabeth Lara, *id.*

except that they deny verifying the accuracy of their pay. *Id.* at 14–
15, 34–35.

A review of the remaining responses to requests for
admissions reveals that all hourly employees generally admit to
reporting all their hours.[8] The two that do not make similar
admissions are Miguel Caballero Sanchez and Richard Esquivel.
ECF No. 49-10 at 143–44, 183–84. Both admit that they do not
have records to rebut Delia's timekeeping records, excerpts of
which show that Delia's recorded employee time and paid
overtime. *Id.*; *see* ECF No. 49-11. Interestingly, and as noted above,
during his deposition, Caballero Sanchez admitted to punching in
and out, performing work duties while on the clock, using the
timekeeping system correctly, and receiving overtime pay for all
the hours he worked over forty in a week. ECF No. 49-6 at 4–6. In
his declaration, Richard Esquivel identifies his date of
employment as "9-05-2018," which is outside the relevant period
for this case. ECF No. 49-9 at 50–51. He does not specifically state
that he worked over forty hours in any week during the relevant
period, and he does not state that he was not paid overtime. *Id.*
Plaintiffs Miguel Caballero Sanchez and Richard Esquivel do not
provide definite and certain evidence showing that Plaintiffs
performed work for which they were not properly compensated.

Thus, because Delia's has submitted evidence that it kept
records of Plaintiffs' time, each Plaintiff must present definite and
certain evidence showing that they performed work for which they
were not properly compensated to satisfy their prima facie burden.
*Flores*, 73 F.4th at 364. Delia's argues that "Plaintiffs have failed

---

at 23–25; Hector Sanchez, *id.* at 73–75; Guillermo Ruiz, *id.* at 63–65; Yessy Perez Martinez,
*id.* at 192–94; and Rafael Sanchez, *id.* at 172–174.

[8] The affidavits and declarations do not address whether Delia's kept records of hourly
employees' time.

to provide definite and certain evidence that they performed work for which they were not compensated." ECF No. 49 at 16. The court agrees. As the court stated above, Plaintiffs' evidence is vague and does not specify hours for which they were improperly compensated. The court will review each category of evidence herein.

The deposition testimony from the hourly employees does not provide any evidence that any Plaintiff performed work for which they were not properly compensated. Olga Perez stated that she kept her pay stubs, and that all of her hours were correctly reflected in the pay stubs. ECF No. 49-2 at 5. Elias Gutierrez testified that Delia's paid him time and one-half for the hours he worked over forty in a week. ECF No. 49-4 at 4. Miguel Caballero testified that he received overtime pay beginning in 2017 until his termination in 2023. ECF No. 49-6 at 7. No hourly plaintiff testified that Delia's failed to pay them overtime pay between 2020 and 2023.

The court turns to Plaintiffs' hand-written declarations.[9] ECF No. 49-9. No declaration includes definite and certain evidence that Plaintiffs performed work for which they were not compensated. ECF No. 49-9. For example, Rafael Sanchez says he worked for Delia's between 2008 and May 2023 from 5:00 am to 10:00 pm or an average of 118 hours per week. *Id.* at 4. He does not say he was not paid overtime. The pay records show that Rafael Sanchez earned $9.00 per hour in 2020 and was paid during that year $3,652.77 in overtime, $106 in a bonus, $144 in holiday pay, and $920 in vacation pay. ECF No. 49-11 at 17.

---

[9] Plaintiffs produced the declarations in response to the court's March 8, 2024 order. ECF No. 31.

Concepcion Perez states in her declaration that she worked as a cook from 2014 through May 2, 2023. ECF No. 49-9 at 8–9. She states that she worked 12 to 15 hours per day at $10.50 per hour and that she was paid with checks. *Id.* She does not clarify whether she was properly compensated for any specific overtime hours that she worked. The pay records show that she earned $3,427.71 in overtime in 2020. ECF No. 49-11 at 6.

Similarly, Guillermo Ruiz states in his declaration that he worked 70 hours weekly and earned $10.25 per hour. ECF No. 49-9 at 20–21. He does not clarify whether he was properly compensated for any specific overtime hours that he worked. The pay records show that he earned $3,341.01 in overtime in 2020. ECF No. 49-11 at 18.

The three declarations discussed above are representative of all the hourly employees' declarations. Plaintiffs summarily state that they worked 12 or 15 hours a day or 70 hours a week. They do not specify what months or years they worked those hours in, nor do they specify how much they were paid for that work beyond the barest statement of their regular hourly rate. None of Plaintiffs' declarations rebut Delia's evidence that Plaintiffs received correct overtime pay.

Plaintiffs' affidavits[10] also do not provide definite and certain evidence that Plaintiffs performed work for which they were not compensated. Ofelia Benavides's affidavit says that she was paid in cash in 2006 at a rate of $45 per shift, but says nothing about the time period relevant to this case and says nothing about overtime pay during that period. ECF No. 50-1 at 127. The pay records show that Ofelia Benavides made $11.50 per hour, but also

---

[10] Plaintiffs submitted only three affidavits in English from the hourly Plaintiffs.

that she was paid $14,145 in overtime during 2020. ECF No. 49-11 at 2.

Olga Perez states in her affidavit that she began working at Delia's in 2007 and remained an employee until May 2, 2023. ECF No. 50-1 at 19. She states that she was paid in cash until 2017, when she began to be paid by check. *Id.* She states that she worked "60 to 80 hrs a wk," but seems to be referring to the years 2009–2010. *Id.* She says she was not paid overtime when she received her "weekly cash envelope," *id.*, but that appears to refer to a time before 2017, when the fingerprint timekeeping system was introduced. She does not provide any specific facts as to her pay or hours worked in the relevant time period. The pay records show that she was paid $5,888.16 in overtime in 2020. ECF No. 49-11 at 7.

Angelica Chavez[11] states in her affidavit that she worked both on salary and hourly. ECF No. 50-1 at 126. She does not specify when she worked in either capacity. She states that, while working as a salaried manager, she worked 85 hours per week "and was only getting a salary." *Id.* Yet the pay records show that she was paid on an hourly basis, including overtime.[12] ECF No. 49-11 at 5 (showing Chavez was paid $13,074 in overtime during 2020). There are only three English affidavits for the hourly employees,

---

[11] Plaintiffs argue that Delia's "failed to list/include" Plaintiffs Angelica Chavez and Juana Cruz in its summary judgment motion. ECF No. 50 at 15. Plaintiffs are incorrect. Delia's included Juana Cruz and Angelica Chavez as hourly plaintiffs. ECF No. 49 at 9. Neither Plaintiffs' evidence demonstrates a genuine fact issue sufficient to carry their summary judgment burden.

[12] Plaintiffs argue that Chavez was incorrectly classified as an exempt salary employee. ECF No. 50 at 15. There is no evidence that Chavez was a salary employee during the relevant time period and the pay records indicate that Chavez was an hourly employee. ECF No. 49-11 at 5.

and none raises a material fact issue sufficient to carry Plaintiffs'
summary judgment burden.

Plaintiffs' responses to requests for admissions do not
provide any evidence that any Plaintiff received incorrect overtime
pay. Juana Cruz admits in her responses to requests for
admissions that she at all times complied with Delia's requirement
to accurately record her hours worked and that she reviewed her
pay on a weekly basis to confirm its accuracy. ECF No. 51-1 at 3.
She admits that Delia's paid her overtime from 2020–2023, and
she admits that Delia's correctly paid her for all hours she worked
from 2020–2023. *Id.* Cruz denies, however, that Delia's paid her
time and one-half for overtime hours during the relevant period.[13]
*Id.* The pay records show that she was paid on an hourly basis,
including overtime. ECF No. 49-11 at 1 (showing Cruz was paid
$2,681 in overtime during 2020). Cruz's responses to Delia's
requests for admissions are similar to most other Plaintiffs. No
Plaintiff states any more than "admit" or "deny" in their responses,
and no Plaintiff's responses provide specific facts to rebut Delia's
pay records.

In summary, hourly employees have not met their burden to
present definite and certain evidence showing their unpaid
overtime hours. Accordingly, because the hourly employee
Plaintiffs have not met their burden to raise a genuine issue of
material fact, Delia's motion is granted as to the hourly employees.

The court also addresses Delia's argument that there is no
evidence that Delia's had actual or constructive knowledge that
Plaintiffs were working more hours than reported. ECF No. 49
at 15. Plaintiffs argue in response that Delia's did have knowledge

---

[13] Juana Cruz's court-ordered declaration states that she was a cook and a manager.
ECF No. 49-9 at 42–43. She does not specify when she worked in either capacity.

that Plaintiffs worked more than forty hours per week. However, Plaintiffs provide no evidence that that is true.

"An employee cannot perform overtime work without the employer's knowledge or contrary to its instructions and then assert a right to be paid." *Prince v. MND Hosp., Inc.*, No. H-08-2617, 2009 WL 2170042 (S.D. Tex. July 20, 2009) (citing *Harvill*, 433 F.3d at 441). The pay stubs show that hourly employees were paid thousands in overtime wages in 2020. *See* ECF No. 49-11. There is no evidence showing that Delia's had actual or constructive knowledge that Plaintiffs worked more hours than reported, and many Plaintiffs admitted that they correctly reported all their hours worked. Hourly employee Plaintiffs cannot succeed on their overtime claims.

Delia's motion is granted as to the hourly employees.

### c. Exempt Employees

The court turns to the parties' arguments about the seven exempt employees. The overtime pay requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity. . . ." 29 U.S.C. § 213(a)(1). "The bona fide executive exemption applies to employees (1) paid at least $455[14] per week 'on a salary basis' (2) whose 'primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;' (3) who 'customarily and regularly' direct 'the work of two or more employees;' and (4) who have the 'authority to hire or fire other employees' or whose hiring and firing recommendations 'are given particular weight.'" *Miller*, 2018 WL 1004860, at *4 (citing 29

---

[14] On January 1, 2020, this amount was increased to $684. *See Escribano v. Travis Cnty., Tex.*, 947 F.3d 265, 267 n.1 (5th Cir. 2020) (citing Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51,230, 51,231 (Sept. 27, 2019)).

C.F.R. § 541.100(a)). "The employer has the burden of establishing that an exemption applies by a preponderance of the evidence." *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020).

According to Sofia Lubin's declaration, both managers and supervisors are compensated on a salary basis without regard to the number of hours they work per week. ECF No. 49-12 at 1. Lubin states that managers are assigned to a single location, and their primary duty is to oversee the daily operations of the business. *Id.* Managers supervise employees, train new and current employees, and recommend disciplinary actions and terminations of employees. *Id.* Managers also organize the shift schedule, monitor attendance, assign duties, and handle customer complaints. *Id.*

Delia's admits that there are no records of the exempt employee's time worked because they were paid on a salary, not hourly basis. ECF No. 49 at 20. Thus, the more lenient *Mt. Clemens* standard applies. "Under this relaxed standard, a plaintiff need not prove 'the precise extent of uncompensated work,' though he must present more than 'unsubstantiated assertions[.]'" *Flores*, 73 F.4th at 362. Here, each exempt employee has met this lower burden by stating that they worked more than forty hours per week and were not compensated with overtime pay for it. ECF No. 50-1 at 122 (Rosa Quintanilla); ECF No. 49-9 at 1–2 (Carlos Lopez); ECF No. 50-1 at 123 (Hector Gonzalez); ECF No. 49-9 at 18–19 (Jorge Mauleon), 40–41 (Rosendo Lievanos), 44–45 (Luis Zuniga), 10–11 (Armando Morales).

Delia's argues that the exempt employees are not owed overtime because they meet the exception for executives. ECF No. 49 at 19–20. In response, Plaintiffs argue that Delia's misclassified the seven exempt employees, and that those employees were thus entitled to overtime pay. ECF No. 50

at 13–15. As a threshold matter, Delia's argues that Plaintiffs have not pled a misclassification claim and that such a claim is not properly before the court. ECF No. 51 at 12–13.

Delia's misconstrues the law. Delia's motion argued that exempt employees were not subject to the FLSA's overtime provision. It is Delia's burden on a motion for summary judgment to show that the exception applies. *See Faludi*, 950 F.3d at 273 (stating that it is an employer's burden to show that an exception applies where Plaintiff filed his FLSA lawsuit seeking to recover unpaid overtime wages). Plaintiffs did not need to raise a separate claim for misclassification. All parties involved knew prior to the motion for summary judgment that Plaintiffs believed they were entitled to overtime pay. Thus, the court considers the evidence.

There is at least some evidence that the exempt employees meet the first three factors of the executive exemption. They each stated that they were paid a weekly salary in excess of the mandated minimum. They each also stated that their duties involved supervising employees. ECF No. 50-1 at 122; ECF No. 49-9 at 1–2, 46–49, 18–19, 40–41, 44–45, 10–11.

The fourth factor is whether the employee had authority to hire or fire or whether the employee's hiring and firing recommendations were given particular weight. As the court explains below, there is a genuine issue of material fact only as to three exempt employees.

Two exempt employees admitted facts showing that they meet the executive exemption. Rosendo Lievanos and Armando Morales both testified that they had authority to hire and fire or that their hiring and firing recommendations were given particular weight. Rosendo Lievanos was promoted to manager in 2016. ECF No. 50-1 at 105. He supervised between twenty and thirty employees. *Id.* His last rate of pay was $1,100 per week, plus bonuses. *Id.* at 106. As a manager, he could hire and fire

24

employees. *Id.* at 107–08. He would also enforce store policies, handle customer complaints, discipline employees, give performance evaluations, and recommend raises. *Id.* at 108–10. He also ordered and received product. *Id.* at 111.

Armando Morales started as a manager and was promoted to supervisor. ECF No. 50-1 at 23. As a supervisor, he had two managers that reported directly to him, and under them were between thirty and thirty-five employees. *Id.* at 24. As a supervisor he hired people and fired people, although apparently in the period before his deposition, he would only make recommendations to human resources as to terminations. *Id.* at 25 (stating that "lately, [he] had to have the consent of human resources" to terminate an employee). He also disciplined employees when authorized by human resources. *Id.* Morales was also responsible for, among other things, the finances of the store, reconciling cash register sales, and ensuring employees were following the rules. *Id.* at 25–27. He also performed employee evaluations. *Id.* at 39. For many of his decisions, he would have to seek approval of the person above him, but his recommendations were followed "all the time." *Id.* at 29. The evidence shows that Rosendo Lievanos and Armando Morales meet all four factors of the exemption. Thus, there is no dispute that they were exempt, and summary judgment is granted as to Rosendo Lievanos and Armando Morales.

Two exempt employees, Carlos Lopez and Jorge Mauleon, provided no evidence about their duties and have failed to raise a material fact issue as to their exempt status. There is evidence in the record that managers at Delia's have authority to recommend disciplinary action or termination of employees, supervise and train employees, oversee daily operations of the business, organize shift schedules, monitor attendance, and handle customer complaints. ECF No. 49-12 at 1. Carlos Lopez and Jorge Mauleon have not provided any contrary evidence.

Carlos Lopez's pay records show that he was on a salary as a "manager." ECF No. 49-11 at 24. In his court ordered discovery response, Lopez states that he was working approximately fifteen hours per day as a manager and was earning a salary of $1,299. ECF No. 49-9 at 1. The salary he quotes and the salary shown on his pay records are different, but it appears undisputed that he was working more than 40 hours and earning a flat salary. Lopez was not deposed and did not provide a declaration, other than the referenced discovery response. He thus provided no information about his duties.

Jorge Mauleon states that he was a manager. ECF No. 49-9 at 18. He claims to have worked fifteen hours per day, six days per week, for a pay rate of $820 per week. He gives no details about his work duties.

Carlos Lopez and Jorge Mauleon did not provide any evidence about their work duties. Thus, there is no dispute that they were exempt, and summary judgment is granted as to Carlos Lopez and Jorge Mauleon.

Three exempt employees provide contrary evidence disputing Delia's statement that they were exempt. They deny having authority to hire or fire. Luis Zuniga was a salaried manager beginning in 2019. ECF No. 50-1 at 70. His salary started at $750 per week and was $1,120 per week when he separated from Delia's. *Id.* As a manager he supervised between thirty and thirty-five full time employees. *Id.* at 71. He was the manager over Delia's San Juan store. *Id.* at 71–72. Zuniga denied being able to hire employees or interview prospective employees. *Id.* at 72. Nor did he ever make a recommendation to hire or fire any employee. *Id.* at 73. He also denied setting schedules, training employees, or even monitoring employee attendance. *Id.* at 74–75. He apparently did not even handle customer complaints. *Id.* at 76. According to Zuniga, it was the supervisor, not the manager who made all those

sorts of decisions. *Id.* at 78 (stating that the supervisor "was in charge of everything"). Zuniga stated that he worked "80 to 90 hours all year." *Id.* at 83.

Delia's has not provided any specific evidence to rebut Zuniga's statements. Delia's has not provided any examples showing that Zuniga performed employee evaluations or that he recommended hiring or firing anyone. Thus, because Zuniga denies having job duties that meet the executive exemption, there is a fact question that materially affects Zuniga's exempt status. *Cf. Thomas v. Houston Metro Elec. Corp.*, No. CV H-08-0545, 2009 WL 10713924, at *10 (S.D. Tex. Aug. 13, 2009) (denying summary judgment where Defendant only generally stated that Plaintiffs made recommendations as to hiring and firing and Defendant "put forth no specific evidence as to employees Plaintiffs recommended, the frequency of the recommendations, or any occasions on which Plaintiffs' recommendations were followed").

The same is true for Rosa Quintanilla. Rosa Quintanilla's pay records show that she was paid $740.68 per week in salary in 2020 without any overtime pay. ECF No. 49-11 at 26. According to her response to the court's discovery order, in 2023, Quintanilla worked 85 hours per week and was paid a salary of $1,250 per week. In her affidavit, Quintanilla states that she was promoted to manager in "the last few years working at Delia's but [she] did not have the power to hire and [fire] or even recommend. That was the HR dept." ECF No. 50-1 at 122. She claims that "the majority of [her] duties as manager were the same ones [she] had when [she] was on hourly wage." *Id.* Delia's does not provide any specific evidence to rebut Quintanilla's statements. Thus, there is a fact question that materially affects

There is also a fact question as to Hector Gonzalez's exempt status. Hector Gonzalez was a manager who supervised fifteen to twenty employees. ECF No. 49-9 at 48. He worked eighty hours

per week on the average, and states that he earned $900 per week. *Id.* Gonzalez's pay records show that he was a salaried manager making a little less than $900 per week. ECF No. 49-11 at 11. In his declaration, he states that he worked between eighty and eighty-five hours per week with no overtime pay. ECF No. 50-1 at 123. He states that he "never had the authority to hire and fire or even recommend to HR about other employees." *Id.* He claims that the majority of his duties as a manager were the same as those he had when he was earning an hourly wage. *Id.* Delia's does not provide any specific evidence to rebut Gonzalez's statements. Thus, there is a fact question that materially affects Gonzalez's exempt status.

As the court explained above, there is a fact dispute about Luis Zuniga, Rosa Quintanilla, and Hector Gonzalez's responsibilities that materially affects whether they were exempt employees. *See Thomas*, 2009 WL 10713924, at *10. Summary judgment is **DENIED** as to Luis Zuniga, Rosa Quintanilla, and Hector Gonzalez.

### d. Liquidated Damages

The FLSA provides that liquidated damages be awarded for FLSA violations in an amount equal to the actual damages. 29 U.S.C. § 216(b). A district court may exercise its discretion and refuse to award mandatory statutory liquidated damages if the employer meets its "substantial burden" to demonstrate its good faith and reasonable grounds for believing it did not violate the FLSA. *Dacar v. Saybolt, L.P.,* 914 F.3d 917, 931 (5th Cir. 2018), *as amended on denial of reh'g and reh'g en banc* (Feb. 1, 2019). That is, "an employer who violates the FLSA is liable for liquidated damages equal to the unpaid overtime unless the court finds that the employer acted in good faith and had reasonable grounds to believe that his actions complied with the statute and therefore declines to award or reduces the amount of the liquidated

damages." *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 544 (S.D. Tex. 2011).

Delia's argues that it is entitled to summary judgment as to liquidated damages because it acted reasonably and in good faith. ECF No. 49 at 23–25. Delia's further argues that Plaintiffs have not provided evidence that Delia's acted willfully. *Id.*

The question is whether *Delia's* has met its substantial burden to show that it acted in good faith and had reasonable grounds for believing it did not violate the FLSA as to the three remaining Plaintiffs. Delia's argument is premature. The court is unable to determine at this stage whether Delia's acted reasonably and in good faith. Thus, Delia's motion as to liquidated damages is **DENIED** without prejudice to raising similar arguments at trial.

### 5. Conclusion

Delia's Motion for Final Summary Judgment, ECF No. 49, is **GRANTED in part and DENIED in part**. Three Plaintiffs (Luis Zuniga, Rosa Quintanilla, and Hector Gonzalez) remain in the case.

Signed at Houston, Texas on September 30, 2025.

_____
Peter Bray
United States Magistrate Judge